**James L. ROTH, Plaintiff–Appellant,**

v.

**U.S.S. GREAT LAKES FLEET, INC.,
a Delaware corporation,
Defendant–Appellee.**

No. 93–2911.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1994.

Decided June 7, 1994.

John Cochrane, St. Paul, MN, argued (John A. Cockrane and Patrick C. Smith, on the brief), for appellant.

Henry Billinsley, Cleveland, OH, argued (Henry E. Billingsley, II and Jeffrey A. Healy, Cleveland, OH, and Vernle Durocher Minneapolis, MN, on the brief), for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and BOGUE,* Senior District Judge.

BOGUE, Senior District Judge.

James L. Roth appeals from the district court's[1] order entering summary judgment in favor of USS Great Lakes Fleet, Inc. (Great Lakes) on this action brought pursuant to the Jones Act, 46 U.S.C.App. § 688. We affirm.

Roth was hired by Great Lakes in January 1990 to assist in the painting and maintenance of ships which were docked for the winter season in Superior, Wisconsin. He was a temporary Port Service Laborer, with no assignment to a specific vessel. He had no expectation that he would ship out when the ships eventually left the dock after the spring thaw.

Roth worked on two ships, both of which were undergoing major upkeep and maintenance at the time. The regular crews of both ships had been discharged for the season. Roth never lived on the ships and was never permanently assigned to either one. He came to work at the shipyard every morning and went back into town every night. During his shift, he was allowed to eat and use restroom facilities on board the ships.

On February 22, 1990, Roth injured an eye while chipping rust off one of the ships in preparation for painting. He was wearing a face shield at the time, which he claims was defective and dangerous.

Initially, Roth filed a claim against Great Lakes for benefits under the Longshore and Harborworkers' Compensation Act, 33 U.S.C. §§ 901, et seq., which provides a system of compensation for land-based maritime employees who are injured on the job. The parties settled this claim in August 1991, pursuant to an agreement which was approved by the United States Department of Labor.

Next, Roth brought a second action against Great Lakes, this time under the auspices of the Jones Act, 46 U.S.C.App. § 688. The Jones Act allows "any seaman who ... suffer[s] personal injury in the course of his employment" to maintain an action for damages against his employer. *Id.* Great Lakes moved for summary judgment, asserting that Roth was not a seaman; or alternatively, that the award of benefits under the Longshoreman's Act precluded a second recovery under the Jones Act. The district court agreed with both of defendant's arguments, and granted summary judgment. We affirm on the former issue, and do not address the latter.

■ We review the district court's grant of summary judgment de novo, applying the same standards and affirming only when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993) (citations omitted). All evidence is viewed in the light most favorable to the nonmoving party, Roth, and he is given the benefit of all reasonable factual inferences. *Id.*

The question of seaman status under the Jones Act has been recognized as a fact-intensive issue often best left to the discretion of a jury, *Slatton v. Martin K. Eby Const. Co.,* 506 F.2d 505, 510 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); however, the Supreme Court has recently noted in the same context that "summary judgment ... is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991); *see also Boyd v. Ford Motor Co.,* 948 F.2d 283, 289 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

■ In *Wilander,* the Supreme Court undertook a comprehensive analysis of the question of seaman status under the Jones Act, which does not itself define the term. The Court analogized the term "seaman"

* The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge, for the District of Minnesota.

with "master or member of a crew," taken from the Longshoreman's Act, and said that an employee's seaman status should be viewed "solely in terms of ... [his] connection to a vessel in navigation." *Id.*, 498 U.S. at 354, 111 S.Ct. at 817. In essence, the Court defined "seaman" as "a sea-based maritime employee." *Id.* at 348, 111 S.Ct. at 814. The Court also stated that "under the Jones Act ... seamen do not include land-based workers." *Id.* Further, "it is not the employee's particular job that is determinative, but ... [his] connection to a vessel." *Id.* at 354, 111 S.Ct. at 817.[2] *See also Southwest Marine, Inc. v. Gizoni,* — U.S. ——, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) ("The key to seaman status is employment-related connection to a vessel in navigation.") (citing *Wilander*). In light of this framework, we find that the facts will reasonably support only one conclusion—that Roth is not a seaman, as that term is used in the Jones Act.

█ The underlying theme of *Wilander* regarding seaman status is a requirement that, to be a seaman, an employee must be assigned to a ship, owing his "allegiance to *a* vessel and not solely to a land-based employer." *Id.* at 347, 111 S.Ct. at 813 (emphasis supplied). Clearly, Mr. Roth owed his allegiance solely to Great Lakes, a land-based employer, and not to any particular vessel at the time of his injury. He worked aboard two different ships (not just one), went back into town after each shift, and from the outset of his tenure both he and Great Lakes understood that he was a temporary employee who would not be a part of the crew when the shipping season began again. In fact, a list of the crews of the two respective ships, referenced by Roth in his appeal brief, adds to the conclusion that he was not a member—as his name does not appear on either list.

The traditional test for seaman status is: 1) the injured worker must perform at least a substantial part of his work on any floating structure used for transport in navigable waters; and 2) his work must contribute to the function of the vessel or the accomplishment

of its mission. *Slatton,* 506 F.2d at 510. Although at first blush this appears to be a broad standard, the *Wilander* Court also noted that "[t]here is implied a definite and permanent connection with the vessel[.]" *Id.*, 498 U.S. at 355, 111 S.Ct. at 817 (citation omitted). No such definite or permanent connection exists here, given Roth's temporary status as a shore-based employee and the other circumstances outlined above.

The judgment of the district court is AFFIRMED.

---

**2.** In this regard, we note the limited significance of Roth's contention that he performed "sea-

man's work" during the relevant timeframe.