Judith L. JOHNSON, as Personal Representative of the Estate of Todd Olson, Plaintiff, Deceased; Judith L. Johnson, Surviving Mother of Todd Olson; Sheryl Ann Huggins, Surviving Sister of Todd Olson, Appellants,

v.

CONTINENTAL GRAIN COMPANY; ContiCarriers & Terminals, Inc.; Dakota Barge Service, Appellees.

No. 94–3162.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1995.

Decided June 26, 1995.

William Domnarski, Minneapolis, MN, argued, for appellants.

Raymond Lee Massey, St. Louis, MO, argued (James W. Erwin and Anthony G. Simon, on the brief), for appellees.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MAGILL, Circuit Judge.

Judith Johnson and Sheryl Ann Huggins appeal the district court's [1] grant of summary judgment in favor of ContiCarriers & Terminals, Inc., and Dakota Barge Service. Johnson and Huggins argue the district court erred in determining that (1) Todd Olson was not a seaman, and (2) Johnson and Huggins have no standing to pursue a claim under the Longshore and Harbor Workers' Compensation Act (LHWCA). We affirm.

## I. BACKGROUND

On October 19, 1992, Todd Olson was accidentally killed while he was repairing a barge during the course of his employment for Dakota Barge Service. At the time of his death, Olson was twenty-seven years old, single and without dependents. Judith Johnson and Sheryl Ann Huggins (Plaintiffs) are Olson's surviving mother and sister, respectively. At the time of his death, Olson was financially independent and neither resided with nor provided any financial support to either of the Plaintiffs.

Dakota operates a land-based Mississippi River barge fleeting, cleaning and repair facility in St. Paul, Minnesota. The repair facility contains a dock wall to moor barges for above water repairs and cleaning. Dakota also has a dry dock to remove barges, or portions of barges, out of the water for below water repairs. Dakota owns only one barge. The barges serviced at Dakota are owned or operated by numerous different barge line companies and remain at Dakota's facility long enough to be repaired or cleaned.

Dakota originally hired Olson in April 1992 as a temporary welder, to work at its land-based repair facility in St. Paul. Olson became a full-time welder for Dakota in June 1992; Olson was paid by the hour, worked an eight-hour shift, and commuted daily to work from his home. When Olson reported to work daily, he would receive an assignment. Usually Olson was assigned to perform welding repairs, but would clean barges if no welding repairs were needed. Approximately 75% of Olson's time was spent performing welding repairs and 25% was spent cleaning barges. Typically, Olson worked on several barges per day. Olson was not permanently assigned to a particular barge or group of barges. When Olson finished an assignment, he would return to Dakota's land-based office to receive another assignment. Olson's work on any barge was random, impermanent and dependent on the services various barge owners requested.

Olson never navigated vessels, boarded harbor tugs to assist the movement of barges, nor had he ever served as a member of a crew of a vessel. An unrelated harbor service, Olympic Marine, moved barges into and out of Dakota's repair facility. Olympic's harbor tugs were crewed by deckhands and pilots employed by Olympic. Dakota personnel, including Olson, did not physically participate in the transportation of the barges into or out of Dakota's repair facility.

On the day of the fatal accident, Olson was repairing a barge owned by ContiCarriers that was moored to Dakota's dry dock wall. Olson was assigned to repair the barge rails on which the barge covers slide. In order to repair the rails, the barge covers needed to

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

be removed. The barge covers were in the process of being removed with a land-based crane. Olson was fatally struck by one of the covers after he left a safety zone on the dock and mistakenly wandered into the path of a swinging cover. After Olson's death, pursuant to the requirements of the LHWCA, Dakota paid Olson's funeral expenses and made a $5000 payment to the longshoreman's special fund because Olson was not survived by dependents.

Plaintiffs sued Dakota and ContiCarriers,[2] alleging: (1) a Jones Act claim against Dakota; (2) a LHWCA § 905(b) claim against Dakota, alleging it to be an owner pro hac vice of a vessel; (3) a general maritime law negligence claim against ContiCarriers; (4) a general maritime law unseaworthiness claim against ContiCarriers; and (5) a LHWCA § 933 third-party liability claim against ContiCarriers. The district court granted summary judgment in favor of Dakota and ContiCarriers determining that Olson was not a seaman; thus he was not entitled to assert claims under the Jones Act and could assert claims only under the LHWCA and that the Plaintiffs lacked standing to assert any LHWCA claims. Plaintiffs appeal, arguing that the district court erred in determining that Olson was not a seaman and that Plaintiffs lack standing to pursue LHWCA claims.

## II. DISCUSSION

■ We review the district court's grant of summary judgment de novo. Our task is to determine whether the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Commercial Union Ins. Co. v. McKinnon*, 10 F.3d 1352, 1354 (8th Cir.1993).

### A. Claims Against Dakota

#### 1. Jones Act

■ Plaintiffs concede that their claims against Dakota under the Jones Act succeed

only if Olson is excluded from the LHWCA. The LHWCA provides recovery to a wide range of "land-based maritime workers" for injuries sustained. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991). "A master or member of a crew of any vessel" is specifically excluded from the provisions of the LHWCA. 33 U.S.C. § 902(3)(G) (1988). The terms "master or member of a crew" are refinements of the term "seaman" in the Jones Act. *McDermott*, 498 U.S. at 347, 111 S.Ct. at 813. Accordingly, any person covered by the Jones Act is excluded from coverage under the LHWCA and vice versa. *Id.* Therefore, to determine whether Olson is entitled to recovery under the Jones Act or the LHWCA turns on determining whether Olson was a "seaman" and thus a "master or member of a crew." If Olson was a seaman, he may pursue a Jones Act claim. If Olson was not a seaman, he was a longshoreman and cannot pursue a Jones Act claim.

■ If Olson is covered by the LHWCA, it provides the exclusive remedy against his employer, Dakota. 33 U.S.C. § 905 (1988). Furthermore, if Olson is covered by the LHWCA, he is not entitled to recover under the theory of unseaworthiness of the vessel. *Id.* Accordingly, the LHWCA creates a clear distinction between land-based and sea-based maritime workers. *McDermott*, 498 U.S. at 347, 111 S.Ct. at 813.

■ Seaman status is usually a fact-intensive inquiry properly left to the jury to resolve. *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994). However, summary judgment is appropriate "where the facts and the law will reasonably support only one conclusion." *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991)).

■ In this circuit, "[t]he traditional test for seaman status is: 1) the injured worker must perform at least a substantial part of his work on any floating structure

**2.** Plaintiffs also sued Continental Grain Company, the parent company of ContiCarriers. The district court dismissed all claims against Continental, holding that its subsidiary's, ContiCarriers, ownership of a barge, standing alone, was an insufficient basis to establish liability by Continental. Plaintiffs do not appeal this decision.

used for transport in navigable waters; and 2) his work must contribute to the function of the vessel or the accomplishment of its mission." *Roth*, 25 F.3d at 709. Within the first element there is also implied a definite and permanent connection with the vessel. *Id.* To satisfy this first element, the determinative factor is the employee's connection to a vessel, not the employee's particular job. *McDermott*, 498 U.S. at 354, 111 S.Ct. at 817. In other words, "[t]he key to seaman status is employment-related connection to a vessel in navigation." *Id.* at 355, 111 S.Ct. at 817. The employee's connection must have an element of permanency to it; a transitory connection to a vessel or group of vessels is not sufficient. *Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 310 (5th Cir.1984). This connection may be to either a particular vessel or a fleet of vessels. *Id.*

Plaintiffs argue that Olson had a connection to a vessel because he performed a substantial portion of his work on an identifiable fleet of vessels. We disagree with Plaintiffs' assertion that Olson had a connection with an identifiable fleet of vessels. A fleet of vessels is "an 'identifiable group of vessels acting together or under one control.'" *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1257 (2d Cir.1994) (quoting *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (en banc)). At the very least to constitute a fleet, the vessels "must take their direction from one identifiable central authority." *Id.* at 1258.

Plaintiffs argue that the barges Olson worked upon were a fleet because the barges were grouped in a "fleet diagram" by Dakota. However, as noted by the district court, the " 'fleet diagrams' were the functional equivalent of numbering systems used in commercial parking lots to keep track of the location of individual cars." Appellees' App. at 10. Furthermore, Dakota exercised only limited control over the barges in its custody; its control was confined to that necessary to fulfill its obligations under the repair contract. Dakota was not free to use the barges for any other purpose or direct the barges.

The barges were owned by numerous companies, and Plaintiffs do not argue that the barges "take their direction from one identifiable central authority." Accordingly, the barges that Olson worked upon at Dakota's facility were not a fleet because they were owned by numerous companies and were not under common control. Because there was no identifiable fleet which Olson was connected to, if he is to qualify as a seaman, he must have a connection to a particular vessel.

Alas, Olson cannot make this showing either. Olson worked on numerous barges entering Dakota's facility. He was assigned to barges randomly, with no permanent connection to any barge or group of barges. Olson did not sleep or eat on any of the barges and commuted to and from his employment with Dakota. It is clear that Olson's allegiance was strictly to Dakota, his land-based employer, and he had no connection to a vessel or an identifiable group of vessels. Accordingly, he is not a seaman for purposes of the Jones Act. *Roth*, 25 F.3d at 709. Thus, we affirm the district court's grant of summary judgment against Plaintiffs on the Jones Act claim. Because Olson was a longshoreman, Dakota's liability to Olson is found exclusively under the provisions of the LHWCA. 33 U.S.C. § 905. Furthermore, we affirm the district court's grant of summary judgment in favor of ContiCarriers on Plaintiffs' unseaworthiness claims because, as noted above, the LHWCA prohibits a longshoreman from pursuing unseaworthiness claims. *Id.*

The LHWCA requires Dakota to pay Olson's reasonable funeral expenses and make payments to a surviving spouse, child or other dependents. 33 U.S.C. § 909 (1988). Olson was unmarried and childless at the time of his death. Plaintiffs concede that they did not reside with Olson or receive financial support from him. Therefore, they are not dependents and they are not entitled to recovery under the LHWCA. When there is no person entitled to compensation, the LHWCA requires a $5000 payment into a special fund. 33 U.S.C. § 944(c)(1) (1988).[3]

---

**3.** Section 944(c)(1) provides:

Whenever the Secretary determines that there is no person entitled under this chapter to com-

Dakota paid Olson's funeral expenses and made the required $5000 payment because Olson died without dependents.

### 2. LHWCA § 905(b) Claim

■ Plaintiffs argue they may recover damages against Dakota as owner pro hac vice of the barge Olson was working upon at the time of his death under § 905(b) of the LHWCA. Section 905(b) allows a ship repairman to pursue a claim for injuries caused by the negligence of a vessel. However, § 905(b) expressly prohibits recovery by a longshoreman who was engaged in ship repair against his employer.[4] We affirm the district court's grant of summary judgment in favor of Dakota on this claim.

### B. Claims Against ContiCarriers

### 1. LHWCA § 933 Claim

■ Plaintiffs argue the district court incorrectly determined that they lack standing to pursue claims against ContiCarriers under § 933 of the LHWCA. Section 933 allows third party negligence claims to be brought by "the person entitled to compensation" under the LHWCA. However, this section also provides that a payment made into a special fund, such as that made by Dakota here, "shall operate as an assignment to the employer of all right of the legal representative of the deceased ... to recover damages against such third person." 33 U.S.C. § 933(c) (1988). Accordingly, under the express terms of the statute, only Dakota has standing to pursue a third party negligence claim against ContiCarriers. Therefore, we affirm the district court's grant of summary judgment in favor of ContiCarriers on this claim.

### 2. General Maritime Claim for Negligence

■ Plaintiffs argue that they can pursue a general maritime law claim against Conti-

Carriers for negligence. Assuming Plaintiffs have standing to pursue this claim, both the Fifth and the Ninth Circuits "follow a well-established principle of land-based tort law that [a]n employee cannot recover for injuries received while doing an act to eliminate the cause of the injury." *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1345 (9th Cir.1988) (internal quotations, citations and footnote omitted). This principle precludes Plaintiffs' claim against ContiCarriers.

In any event, Plaintiffs have not introduced any evidence that ContiCarriers' negligence caused Olson's death. The record indicates that the very nature of the barge towage business requires barges to be repaired regularly. Appellees' App. at 75. ContiCarriers hired Dakota to repair the barge rails on which the covers slide. There is no evidence in the record that this repair was required as a result of ContiCarriers' negligence; in fact, the record states that this type of repair is routine. Appellees' App. at 34. A necessary first step in this repair is the removal of the barge covers. Accordingly, we do not believe that Plaintiffs introduced sufficient evidence to support their theory that ContiCarriers' negligence caused Olson's death. We affirm the district court's grant of summary judgment in favor of ContiCarriers on this claim as well.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring and dissenting.

I concur in the result that the court reaches and in all of the court's opinion except that portion of Part II.B.2 that relies on what the court calls a "well-established principle of

---

[4] pensation for the death of an employee which would otherwise be compensable under this chapter, the appropriate employer shall pay $5,000 as compensation for the death of such an employee.

4. Section 905(b) states, in pertinent part:
   If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.

land-based tort law" that prohibits recovery for injuries received while repairing the cause of the injury. I cannot imagine where such a principle could come from, if it is a principle, and even if it is, it is not applicable here. The plaintiff claimed that the cause of his injury was a condition of the ship that was unrelated to the condition that he was hired to repair.

I would therefore affirm the dismissal of the negligence claim simply on the alternative ground that the court identified, namely, that there was insufficient evidence of the employer's negligence to support a finding of negligence.