Ronald SCHULTZ

v.

**LOUISIANA DOCK COMPANY, et al.**

**Nos. CIV. A. 99–2402, CIV. A. 99–3006.**

United States District Court,
E.D. Louisiana.

May 5, 2000.

Kerry Paul Camarata, Richard A. Thalheim, Jr., Ltd., Thibodaux, LA, for Ronald T. Schultz.

Glenn Gill Goodier, R. Scott Jenkins, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for American Commercial Lines Holdings, American Commercial Barge Line LLC.

## MEMORANDUM AND ORDER

SEAR, District Judge.

*Background*

In these consolidated actions, plaintiff, Ronald Schultz, brings claims under the Jones Act and general maritime law against Louisiana Dock Company, LLC ("Louisiana Dock") and American Commercial Barge Line, LLC ("ACBL").

Defendants now move for summary judgment on grounds that plaintiff is not a seaman and therefore is not entitled to bring claims under the Jones Act and general maritime law against defendants. Plaintiff opposes the motion.

Louisiana Dock owns and operates a barge repair facility in Vacherie, Louisiana. The facility is located on the shore of the Mississippi River. Part of the facility consists of a number of dumb barges which are connected together and permanently moored to the bank for purposes of creating a stationary work platform. Some of the barges that come to the facility for repairs remain in the river but are moored to the work platform during the repair process. Referred to as the "fleeting area," the moored barges extend approximately two miles along the river. Two vessels owned by Louisiana Dock, the M/V CHARLIEVILLE and the M/V ANGLE, are occasionally used to access barges in certain tiers of the fleeting area. There is also a dry dock at the facility.

Between 1997 and 1999, plaintiff was employed by Louisiana Dock as a welder/fitter at the Vacherie facility.[1] As a welder/fitter, plaintiff inspected barges and welded and repaired barges as necessary. Tangential duties included tying and

untying barges and pumping water out of the holds of barges.

Plaintiff slept at home and drove to and from the Vacherie facility each day. He did not eat or sleep on any of the barges that came to the facility for repair work, or on any of the Louisiana Dock boats used to access outlying barges. Plaintiff never traveled or participated in any voyages with any of the barges being repaired at the facility. He admits in his deposition that he never acted as a deckhand on any of the vessels.

Plaintiff alleges he was injured on February 26, 1999, when he slipped and fell inside the tank of a hopper barge which he was checking for leaks. Plaintiff continued working for several weeks until March 16, 1999, when he allegedly exacerbated his injury while carrying two D-rings while working on a barge.

It is undisputed that during the month of February 1999, plaintiff worked solely on barges owned or operated by ACBL.[2] However, company records also reflect that before and after that period of time, plaintiff worked on barges owned or operated by other companies.[3] The manager of the Vacherie facility, William Fancher, estimates that at least eighty percent of the approximately 160 barges serviced at the facility were ACBL barges; the rest were owned by other companies.[4] However, none of the evidence suggests that plaintiff was assigned to work solely on ACBL barges during his employment.[5] Rather, work assignments were made on a random and rotational basis.[6]

Occasionally, plaintiff was transported to barges by the M/V CHARLIEVILLE and/or the M/V ANGLE, and/or performed repair work on barges from these Louisiana Dock boats. Plaintiff was not responsible for the operation or maintenance of

---

1. Schultz deposition at p. 8.

2. William Fancher deposition at pp. 34–35.

3. *Id.* at pp. 32–36, 40.

4. *Id.* at pp. 12–14.

5. *Id.* at p. 41.

6. *Id.*

either of these vessels; both had their own crews.[7]

*Analysis*

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] This language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial."[9] A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact.[10]

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of fact."[11] However, the movant need not support the motion with materials that negate the opponent's claim. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to an absence of evidence to support the non-moving party's claim; the non-moving party must then designate "specific facts showing that there is a genuine issue for trial."[12]

When the moving party has carried its burden under Rule 56(c), the opponent cannot simply "rest on the allegations in [the] complaint"[13] and must present more than a metaphysical doubt about the material facts.[14] Further, a claim that additional discovery or a trial might reveal facts of which the non-moving party is currently unaware is insufficient to defeat the motion.[15] Nevertheless, the evidence of the nonmovant is to be believed and justifiable inferences from the underlying facts are drawn in his favor, and any doubts are resolved against the moving party.[16]

The central issue in this case, with regard to plaintiff's claims against both Louisiana Dock and ACBL, is whether plaintiff can maintain Jones Act, 46 U.S.C.App. § 688, and related general maritime claims that are dependent on seaman status, or whether plaintiff is relegated to claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902 ("LHWCA") against his employer.

The Jones Act and the LHWCA each provide a remedy to the injured maritime worker; however, each specifies different maritime workers to be within its reach. In relevant part, the Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law ...." 46 U.S.C.App. § 688(a). Under the LHWCA, the exclusiveness of liability provision in part states that the liability of an employer "shall be exclusive and in place of all other liability of such employer to the employee...." 33 U.S.C. § 905(a). The term

7. *Id.* at pp. 28–29.

8. Fed.R.Civ.P. 56(c).

9. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

10. *Id.*

11. *Id.* at 323, 106 S.Ct. at 2552–53 (citing Fed.R.Civ.P. 56(c)).

12. *Id.* at 324, 106 S.Ct. at 2553.

13. *International Shortstop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991).

14. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

15. *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1414–15 (5th Cir.1987).

16. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Matsushita,* 475 U.S. at 588, 106 S.Ct. 1348.

"employee," as defined in the LHWCA, does not include "a master or member of a crew of any vessel," 33 U.S.C. § 902(3). The phrase "master or member of a crew of any vessel" is a "refinement" of the term "seaman" in the Jones Act.[17]

■ The Jones Act does not define the term "seaman" and it has been left to the courts to determine exactly which maritime workers are entitled to the special protections afforded to the seaman. In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), the Supreme Court completed its formulation of a two-pronged test for seaman status. The essential requirements for seaman status are twofold:

> First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; and Second, ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature.[18]

In applying the *Chandris* test, all the relevant circumstances of the employee's situation must be considered.[19] Though the test is fact-intensive, the Supreme Court has recognized that summary judgment is appropriate "where the facts and the law will reasonably support only one conclusion."[20]

■ The criteria for seaman status, as stated by the Supreme Court, reflect certain well-settled principles that, in turn, give substance to the two-pronged test crafted by the Court. First, "[w]hether under the Jones Act or general maritime law, seamen do not include land-based workers."[21] "The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seaman."[22] Second, Jones Act coverage depends "not on the place where the injury is inflicted ... but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters."[23] "Land-based maritime workers do not become seaman because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore."[24]

As is often the case, plaintiff's seaman status turns on the second *Chandris* requirement, which mandates a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature."[25] That is, the employee must perform a significant part of his work on board a vessel (or a finite group of vessels under common ownership or control) with at least a degree of regularity and continuity.[26]

17. *McDermott Int'l v. Wilander*, 498 U.S. 337, 349, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

18. *See id.* at 367–70, 111 S.Ct. 807.

19. See *Chandris*, 515 U.S. at 369, 115 S.Ct. 2172.

20. *Id.* (citing *Wilander*, 498 U.S. at 356, 111 S.Ct. 807).

21. *See id.* at 358, 115 S.Ct. 2172 (citations omitted).

22. *Id.* at 359, 115 S.Ct. 2172.

23. *Id.* at 359–60, 115 S.Ct. 2172 (citations omitted).

24. *Id.* at 360, 115 S.Ct. 2172.

25. *See Chandris*, 515 U.S. at 368, 115 S.Ct. 2172. The first requirement—contribution to

the vessel's mission or function—is very broad and inclusive. Rejecting a navigational-related element to this requirement in *Wilander,* the Supreme Court opined that "[a]ll who work at sea in the service of a ship" are at least *eligible* for seaman status. Defendants do not spend much time arguing this prong; defendants' main argument here appears to be a legal one: that the Supreme Court's decision in *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), reinserts a "contribution to *navigational* function" element to the first seaman-status requirement. The *Papai* case, although very significant for purposes of ruling on this motion, speaks to the second requirement—the substantial connection requirement—of the seaman status test, not the first.

26. *See Chandris*, 515 U.S. at 368–69, 115 S.Ct. 2172 (citations omitted).

Due to continuing differences in interpretations of the second requirement of the *Chandris* test, the Supreme Court recently aimed to clarify the test in the case *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). The Court explained that "for the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea" since "[t]he fundamental purpose of th[e] substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." [27]

■ Plaintiff avers that he spent more than 40% of his time working on the floating, moored barges as opposed to dry-docked barges. He also avers that he spent 40% of his time being transported up or down the river on the Louisiana Dock tugboats to reach these barges.[28] Finally, he points to the fact that 80% of the barges at the facility were barges owned or operated by ACBL, the parent company of Louisiana Dock.[29] Plaintiff argues that these facts create a genuine dispute sufficient to defeat summary judgment on seaman status.

Regardless of whether plaintiff spent one percent or 100 percent of his time performing repair work *on* barges brought to the facility for repair, working *from* vessels (the Louisiana Dock tugs) or being transported around the facility *by* vessels, the aggregation of circumstances speaking to the nature of his work and his connection to any identifiable vessel(s) demonstrate that, as a matter of law, he is not a seaman. None of plaintiff's work was of a seagoing nature. Plaintiff's duties were limited to inspecting and repairing barges moored at the facility. He did not go to sea or face the perils of the sea in the manner associated with seaman status. Plaintiff ate meals ashore and went home every night. He admitted that with respect to the vessels used to transport him around the facility he did not serve as a deckhand.

Further, plaintiff did not have a regular or continuous connection to an identifiable vessel or vessels. The only connection a reasonable jury might find among the vessels plaintiff worked on at the facility is that, at the time of his injury, 80% of the barges at the facility were owned or operated by ACBL. This does not suffice, however, because plaintiff's job required him to work on random vessels owned by random entities, for random periods of time. The barges on which plaintiff worked at the facility were owned by various entities, and at any given time his assignment to those vessels was random and impermanent. He did not owe his allegiance to a vessel or group of vessels under common ownership or control.[30] If plaintiff is a seaman, so is every welder/fitter at the facility.

---

**27.** 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).

**28.** Defendants place this figure at 20%, based on a five week rotation that placed plaintiff on the vessel one week out of the five week rotation.

**29.** Plaintiff focuses several times on the fact that there is some corporate relationship between Louisiana Dock and ACBL. I fail to see the relevance of this for purposes of seaman status; whether or not there was a relation-

ship, plaintiff must show a substantial connection to an identifiable group of vessels. Even if the entities are not related, if he is a seaman, he may recover against his employer under the Jones Act and against the vessel owner/operator under a general maritime unseaworthiness cause of action.

**30.** *Cf. White v. Valley Line Co.,* 736 F.2d 304 (5th Cir.1984); *Bouvier v. Krenz,* 702 F.2d 89 (5th Cir.1983); *In re National Marine, Inc.,* 1997 WL 426092; *Johnson v. Continental Grain Co.,* 58 F.3d 1232 (8th Cir.1995).

Plaintiff was an intended beneficiary of the LHWCA. Although mere designation of an employee as a ship repairman or some other occupation enumerated in the LHWCA does not automatically disqualify one from being a seaman,[31] this case does not present the situation where a member of a crew of a vessel is, at the time of the *accident,* performing the work of a ship repairman or some other occupation enumerated in the LHWCA, yet should be found to retain his seaman status based on the larger employment picture. Neither does this case present the seagoing repairman scenario, i.e., someone who is employed by a shipyard and spends a portion of his time working on shore and the rest of his time at sea.

For the foregoing reasons, defendants are entitled to summary judgment on seaman status, dismissing plaintiff's claims under the Jones Act and general maritime law.

Accordingly,

IT IS ORDERED that defendants' motion for summary judgment IS GRANTED.

---

**31.** *See Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 89, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).