In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00309-CV


____________________



PAUL BAILEY, JR., Appellant



V.



R.L. ELDRIDGE CONSTRUCTION, INC., Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-179,329






MEMORANDUM OPINION


 At the time of his injury, appellant Paul Bailey Jr. was employed by appellee R.L.
Eldridge Construction, Inc. ("Eldridge") as a laborer in the construction crew. On September
27, 2006, Bailey fell over the handrail from the second deck of one of Eldridge's tugboats,
the "Mr. Gabby." Bailey filed suit under the Jones Act alleging he was a seaman when he
sustained injuries while working on a vessel owned by Eldridge. Eldridge filed a traditional
motion for summary judgment asserting that Bailey was not a seaman under the Jones Act. 
The trial court granted Eldridge's motion finding that Bailey, as a matter of law, was not a
seaman under the Jones Act, and dismissed Bailey's lawsuit in its entirety. After a motion
for reconsideration filed by Bailey was denied, Bailey filed this appeal. 

STANDARD OF REVIEW


 We review the granting of a traditional motion for summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We must
determine whether the movant carried its burden to establish that there existed no genuine
issue of material fact and that it was entitled to judgment as a matter of law. Shah v. Moss,
67 S.W.3d 836, 842 (Tex. 2001). We assume all evidence favorable to nonmovant is true,
indulge every reasonable inference in favor of the nonmovant; and resolve any doubts in his
favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). A defendant who
moves for traditional summary judgment on the plaintiff's claim must conclusively disprove
at least one element of the plaintiff's cause of action. Little v. Tex. Dep't. Of Crim. Justice,
148 S.W.3d 374, 381 (Tex. 2004). "Once the movant has established a right to summary
judgment, the non-movant must expressly present any reasons seeking to avoid the movant's
entitlement, and must support the reasons with summary judgment proof to establish a fact
issue." Proctor v. RMC Capital Corp., 47 S.W.3d 828, 830-31 (Tex. App.--Beaumont 2001,
no pet.). 

STATUS AS A SEAMAN UNDER THE JONES ACT


 "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in
the course of his employment.'" Chandris, Inc. v. Latsis, 515 U.S. 347, 354, 115 S.Ct. 2172,
2183, 132 L.Ed.2d 314 (1995) (citing 46 U.S.C. app. § 688(a)). However, the Jones Act does
not define the term "seaman." Id. at 355. The Supreme Court in Chandris adopted a two
part test for determining seaman status, previously articulated by the Fifth Circuit in Offshore
Co. v. Robinson, 266 F.2d 769 (5th Cir. 1959):

 First . . . an employee's duties must contribute to the function of the vessel or
to the accomplishment of its mission . . . .


 Second, and most important . . . a seaman must have a connection to a
vessel in navigation (or to an identifiable group of such vessels) that is
substantial in terms of both its duration and its nature. 


Chandris, 515 U.S. at 368 (citations omitted); see also Stewart v. Dutra Constr. Co., 543
U.S. 481, 495, 125 S.Ct. 1118, 1127-28, 160 L.Ed.2d 932, 946 (2005). (1) The second prong
of the Chandris test requires that an employee "perform a significant part of his work on
board a vessel (or a finite group of vessels under common ownership or control) with at least
a degree of regularity and continuity." Schultz v. La. Dock Co., 94 F.Supp.2d 746, 749 (E.D.
La. 2000) (citing Chandris, 515 U.S. at 368-69)). With regard to determining whether an
employee's connection to a vessel is substantial in duration, as a general rule, "[a] worker
who spends less than about 30 percent of his time in the service of a vessel in navigation
should not qualify as a seaman under the Jones Act." Chandris, 515 U.S. at 371; Roberts v.
Cardinal Serv's Inc., 266 F.3d 368, 375 (5th Cir. 2001); see also Voight v. R.L. Eldridge
Const. Inc., 422 F.Supp.2d 742, 749 (E.D. Tex. 2006). 

 The substantial connection requirement is meant to distinguish sea-based workers
whose employment regularly exposes them "to the perils of the sea," from "primarily land-based workers who have only sporadic or tangential connections to navigation." Hufnagel
v. Omega Serv. Indus., Inc., 182 F.3d 340, 346 (5th Cir. 1999) (citing Harbor Tug and Barge
Co. v. Papai, 520 U.S. 548, 555, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997)). 
"Therefore, seaman-status is determined by the employee's entire employment-related
connection to a vessel, and not by the immediate circumstances or location of the plaintiff's
injury." Id. (citing Chandris, 515 U.S. at 363). "[T]he inquiry into the nature of the
employee's connection to the vessel must concentrate on whether the employee's duties take
him to sea." Papai, 520 U.S. at 555.

 When reasonable minds can differ as to a plaintiff's seaman status, the issue should
be resolved by a jury. Voight, 422 F.Supp.2d at 749. However, absent evidence sufficient
to raise a fact issue on each prong of the Chandris test, there is no evidentiary basis for the
case to go to a jury. Id. When the undisputed facts establish that a maritime worker only has
a "temporal connection" to vessels in navigation, the court may take the issue of seaman
status from the jury by granting summary judgment or a directed verdict. Id. (citing
Chandris, 515 U.S. at 371).

SUMMARY JUDGMENT EVIDENCE


 In support of its motion for summary judgment, appellee relies upon excerpts of the
sworn deposition testimony of appellant and affidavits from Robert Reed and Darvis
Eldridge, together with attachments to each. 

 Bailey was employed by Eldridge from June 26, 2006 until September 27, 2006, or
sixty-two working days. It is undisputed that Bailey was not assigned, as part of his
employment, to any of Eldridge's vessels. Bailey worked as a laborer on the construction
crew, while employed by Eldridge. Following Bailey's injury, his supervisor, Robert Reed,
created weekly logs of the work the construction crew did while Bailey worked for Eldridge. (2) 
The logs were created roughly a week or so after Bailey's injury. Reed testified in his
deposition that the logs were created from his memory, as well as the memories of the crane
operator and three other members of the construction crew. Reed also consulted the
company's invoices, but testified that the invoices did not specify the dates or the number of
days worked on any particular job. The weekly logs provided by Reed were attached as an
exhibit to his affidavit, which was submitted as summary judgment evidence. The weekly
logs set forth the following with respect to the work performed by Bailey during his
employment:

 June 26 through June 30, Bailey "worked at fisherman reef repairing dock;"
"worked on dock." 


 July 5 through July 7, Bailey "worked at fisherman reef repairing dock;"
"worked on dock." 


 July 10 through July 15 Bailey "worked at vessel repair driving pipe;" "worked
in the yard." 


 July 17 through July 21, Bailey "worked at vessel repair driving pipe;"
"worked in the yard." 


 July 24 through July 25, Bailey "worked at fisherman reef driving piles with
crane barge;" "worked on crane barge." 


 July 26 through July 28, Bailey "worked at fisherman reef building dock;"
"worked on dock." 


 July 31 through August 4, Bailey "worked at fisherman reef building dock;"
"worked on dock." 


 August 7 through August 11, Bailey "worked at vessel repair driving pipes;"
"worked in the yard." 


 August 21 through August 25, Bailey "worked at Sunoco repairing dock with
crane barge;" "worked on crane barge." 


 August 28 through September 1, Bailey "worked at fisherman reef driving
piles with crane barge;" "worked on crane barge." 


 September 4 through September 8; September 11 through 15; and September
18 through 22, Bailey "worked at fisherman reef building docks;" "worked on
the dock." 


 September 25 through September 26, Bailey "worked at Gabby's dock;"
"worked at the yard." 


 The day of his injury, September 27, Bailey's crew "worked at the drydock
with crane barge;" "worked on the crane barge." 


 Reed testified regarding the work Bailey did while employed by Eldridge and
explained the work he had referenced in the weekly logs he created. According to Reed,
during the time of his employment, Bailey worked repairing two docks that were damaged
in Hurricane Rita and rebuilt another dock. With respect to the docks they repaired, Reed
testified that Bailey "helped nail deck down." Reed explained that the wood was transported
out to the work site on the E-9 crane barge. According to Reed, the crew would load the
wood onto the crane barge, then float on the crane barge to the work site. The E-9 crane
barge has no engine and had to be towed to the job site by one of Eldridge's tugboats. Reed
testified that his crew never rode on the tugboat. The crane barge was spudded down and
they used the crane to pick up the material and set it up on the dock. The crew then worked
from the dock as they repaired it. Reed also testified they had "a little work barge" they
sometimes worked off of while working on the docks. The work barge was used when
driving pilings. 

 Reed testified that the crane barge was used on July 24 and July 25 to drive piles in
connection with building a new dock. After the crew finished driving piles, they would "get
on the bank and start building [the] dock from the bank out." They continued to work off the
dock as they built it out. Reed testified that all four of his laborers, including Bailey, helped
get material on and off the crane barge. Reed explained that while repairing docks, the only
time the crane barge was used was to store and retrieve materials. 

 Reed was the person in charge of assigning his construction crew their tasks each day. 
Reed testified that his construction crew was "land-based" and that they "don't do work from
boats." Reed testified that the members of his construction crew did not perform repair on
Eldridge's tugboats, and that maintenance and repair work on the tugboats was performed
by the deckhand or mechanic. Reed explained that different people in the construction crew
had different jobs. Roger Johnson, another of Bailey's uncles, was the crane operator and
foreman. Bailey's father, Paul Sr., was also a member of the crew and was their "dirt
worker." Paul Sr. did all the dozer, backhoe and trackhoe work. Another member of the
crew was a welder. The crew also had four laborers, which included Bailey. 

 Reed clarified that when the construction crew went out to a job on any particular day
they drove their vehicles to the job site as opposed to riding upon a crane barge or any kind
of vessel. Reed testified that other than the day of Bailey's injury, where the crew rode the
ATLAS II from the Eldridge facility to the Signal dock, Bailey never rode a barge or tugboat
or any other vessel to get to a job site. Reed further testified that Bailey never rode a tugboat,
crane barge, or any other vessel to get from the job site back to another home port or dock
location. Reed testified that the crane barge was never taken out in the waterway and
remained at the job site. 

 Summarizing Reed's affidavit, his testimony and weekly logs, Bailey worked aboard
the crane barge a total of twelve days during his employment with Eldridge; seven days
driving pilings and five days repairing a fender system for barges. The construction crew
spent thirty-eight days performing dock repair, during which the construction crew worked
on the dock and utilized the crane barge as a stationary work platform to store materials. 
Bailey's other eighteen working days were spent working in the yard. 

 On the day Bailey was injured, the construction crew, including Bailey, had been
instructed to work onboard the ATLAS II crane barge. The ATLAS II had no motor and was
towed to the job site at Signal's dry dock by Eldridge's tugboat, the Mr. Gabby. After
exhibiting unusual behavior upon arriving at the dock, Bailey was instructed to rest in the
galley of the Mr. Gabby, which was tied to the barge. Bailey boarded the Mr. Gabby but
proceeded to its second deck instead of the galley. Bailey was injured when he fell over the
handrail of the second deck. 

 In his effort to preclude summary judgment, instead of his own sworn affidavit, Bailey
relies upon excerpts from his sworn deposition testimony, as well as the deposition testimony
of Robert Reed and Darvis Eldridge, including exhibits and attachments thereto. Purportedly
as a result of a brain injury suffered in his fall, appellant's testimony is contradictory
regarding his job duties and responsibilities while employed by Eldridge and with regard to
the events leading up to his accident. 

 Bailey testified in his deposition that he worked on and off Eldridge's crane barges
and tugboats. Bailey admitted that the crane barge he worked on was spudded down and
used as a work platform for construction projects taking place on land. While Bailey
admitted that he was never specifically assigned to work as a crew member on a tugboat, he
testified that he performed general maintenance on Eldridge's tugboats from time to time,
including wheel washing, that he "changed the propellers on the back of the tugboats plenty
of times," cleaned the insides of the tugboats, and steam cleaned the motors, but the record
is not clear if this work was done in dry dock or on water.

 Bailey initially testified that he was "on land a little bit" but "90 percent of the time
[he was] on a boat." However, Bailey then retracted that testimony, stating, "[w]ell, not 90
percent of the time. I would say about 50/50. . . ." Bailey testified that 50% of his time was
spent on land and 50% was spent on a crane barge. However, Bailey ultimately admitted that
his primary duties as a laborer took place on land. Bailey testified, "when we get to work,
we're on land," and "we're on land unless, you know, the [crane] operator might need me to
. . . get something to pick up a piece of pipe or something, we might need for material . . .
like stacking wood to . . . help build the piers. . . ." 

 During his deposition Bailey testified that his memory was really bad as a result of the
injuries he sustained in his accident, and that he could only remember "parts and fragments"
of information regarding where he worked, how long he worked, and what he did while
employed with Eldridge. Bailey testified that while building piers he had to "jump back and
forth" between the crane barge and the pier, for example, to retrieve materials. He also
testified that he occasionally worked from a small barge roughly four feet wide and seven
feet long. 

ANALYSIS


 Bailey argues that a fact issue exists as to whether he was a seaman. Specifically,
Bailey argues there is a fact issue as to whether his duties contributed to the function of
Eldridge's vessels because Bailey "utilized" the E-9 crane barge in building and repairing
docks and because of his testimony of tasks performed on Eldridge's tugboats. Bailey also
contends that he meets the second prong of the Chandris test. Bailey accepts the "30 percent
rule" used to determine substantial duration and argues he spent at least 30% of his time
working "on water" as opposed to working "on land." 

 Eldridge, on the other hand, contends that its summary judgment evidence establishes
that Bailey performed land-based construction work that only incidentally involved the E-9
crane barge as a stationary work platform and equipment storage facility. Eldridge asserts
that Bailey's duties did not contribute to the function of Eldridge's vessels, and Bailey did
not have a connection to Eldridge's vessels that was substantial in duration or nature. 
According to the evidence submitted by Eldridge, Bailey only spent twelve of the sixty-two
days he worked for Eldridge working on a crane barge, as opposed to primarily working on
a dock or in the yard, or only about 21% of his time working aboard Eldridge's vessels. 
Therefore, Eldridge argues that Bailey's connection to any such vessel was temporal at best. 

 In his brief, Bailey relies heavily on the testimony of one of Eldridge's corporate
representative, Darvis Eldridge, wherein she testified in her deposition that "so long as any 
portion of the day is worked on water, the whole day is considered to have been worked on
water." Under this analysis, Bailey essentially argues that any day he went aboard the E-9
crane barge, whether merely to retrieve materials or otherwise, the entire day should be
considered in determining whether he had a sufficient connection to an Eldridge vessel to
meet the second prong of the Chandris test. First, we note that the testimony upon which
Bailey relies dealt with how Eldridge codes its employees for insurance purposes. Eldridge
testified that according to her understanding, if any employee works over water at any point
in the day, the whole day is coded as "over water" as opposed to "over land," for purposes
of calculating an insurance premium. Second, we reiterate that the proper standard for
determining whether an employee's connection to a vessel is substantial in duration is not
simply whether the employee is "over water" 30% of the time, but rather whether the
employee spent at least 30% of his time during employment "in the service of a vessel." See
Chandris, 515 U.S. at 370-71; see also Roberts, 266 F.3d at 375. Finally, we point out that
in order to obtain seaman status, Bailey's connection to Eldridge's vessels must be
substantial not only in duration but also in nature. Chandris, 515 U.S. at 370-71. 

 The Supreme Court explained the analysis under the second prong of the Chandris test
as follows:

 "[T]he total circumstances of an individual's employment must be weighed to
determine whether he had a sufficient relation to the navigation of vessels and
the perils attendant thereon." The duration of a worker's connection to a
vessel and the nature of the worker's activities taken together, determine
whether a maritime employee is a seaman because the ultimate inquiry is
whether the worker in question is a member of the vessel's crew or simply a
land-based employee who happens to be working on the vessel at a given time. 


Id. at 370 (quoting Wallace v. Oceaneering Int'l, 727 F.2d 427, 432 (5th Cir. 1984))
(emphasis added); see also Stewart, 543 U.S. at 495 (recognizing that workers injured aboard
a vessel in navigation "are eligible for seaman status only if they are 'master[s] or
member[s]' of its crew"). "'[A] maritime worker who spends only a small fraction of his
working time onboard a vessel is fundamentally land based and therefore not a member of
the vessel's crew, regardless of what his duties are.'" Nunez v. B & B Dredging, Inc., 288
F.3d 271, 276 (5th Cir. 2002) (quoting Chandris, 515 U.S. at 371)). In determining whether
the nature of an employee's connection to a vessel is substantial, we focus on whether the
employee's duties were primarily sea-based activities. See Cabral v. Healy Tibbits Builders,
Inc., 128 F.3d 1289, 1293 (9th Cir. 1997). 

 Eldridge submitted evidence with its motion for summary judgment conclusively
establishing that Bailey was not a seaman under the Jones Act. Specifically, Eldridge
submitted evidence establishing the locations of where Bailey worked and his duties for each
of the sixty-two days he worked for Eldridge. The evidence established that Bailey was a
laborer in a construction crew, which performed land-based construction projects. The
evidence also established that the only time one of Eldridge's vessels was heavily utilized by
the construction crew during Bailey's employment was when the crew was driving pilings
with the crane barge as part of the construction of the new dock at fisherman reef, and when
the crew worked on the crane barge while repairing fenders at Sunoco. This work was
performed during only twelve of the sixty-two days that Bailey was employed by Eldridge. 
Eldridge established that Bailey's duties did not contribute to the function of or the
accomplishment of the mission of any Eldridge vessel. In addition, Eldridge established that
Bailey's connection to any vessel was not substantial in either duration or nature.

 Once the defendant establishes its right to summary judgment as a matter of law, the
burden shifts to the plaintiff to present competent evidence raising a genuine issue of material
fact. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979). The
court will determine there is a genuine issue of material fact when the nonmovant presents
"more than a scintilla of evidence establishing the existence of the challenged element. . . ." 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).

 While it is clear that Bailey boarded the E-9 crane barge during dock repair
construction projects to retrieve materials, Bailey could not recall how much time was spent
on the E-9 crane barge as opposed to on land while performing such work. Reed testified
that it took "[j]ust a few minutes" to retrieve materials from the crane barge during these
projects and that "it don't take all day or half a day to get material off. We'd probably hook
up to it and put it down, and that's it." While Bailey testified generally in his deposition that
he spent 50% of his time on the crane barge, this mere assertion is unsupported by any factual
basis and is insufficient to raise an issue of fact. See Hamilton v. Wilson, 249 S.W.3d 425,
427 (Tex. 2008)("We have held that conclusory statements . . . are not sufficient to support
or defeat summary judgment."); Hovorka v. Cmty. Health Sys. Inc., 262 S.W.3d 503, 511
(Tex. App.--El Paso 2008, no pet.) (noting that a conclusory statement, one that does not
provide facts to support the conclusion, is insufficient to raise a fact issue). Bailey did not
supplement his deposition testimony with more detailed affidavit testimony of his job duties
or otherwise contradict the weekly logs submitted by Eldridge in support of its motion for
summary judgment with any further evidence from him or his co-workers, many of whom
were his relatives. In addition, taking Bailey's testimony as true regarding minor tasks Bailey
alleges he performed on Eldridge's tugboats, we believe the only rational inference to be
drawn from the evidence is that his connection to any Eldridge "vessel in navigation," if any,
was of an informal, irregular, and unsubstantial nature and insufficient to even create a
genuine issue of material fact regarding the "30 percent rule." 

 The substantiality prong of the Chandris test is meant to "separate the sea-based
maritime employees, who are entitled to Jones Act protection from those land-based workers
who have only a transitory or sporadic connection to a vessel in navigation, and therefore
whose employment does not regularly expose them to the perils of the sea." Chandris, 515
U.S. at 368. Even viewing the evidence in the light most favorable to Bailey, it is clear that
Bailey was a land-based worker and any connection he had to a vessel in navigation was
merely sporadic or transitory. Simply put, Bailey's employment did not regularly expose him
to the perils of the sea. Eldridge submitted evidence establishing that Bailey was not a
seaman as a matter of law. The evidence submitted by Bailey is insufficient to create a
genuine issue of material fact with regard to the challenged element of his status as a
"seaman" under the provisions of the Jones Act. We affirm the judgment of the court below
and overrule Bailey's sole issue on appeal. 

 AFFIRMED. 

 __________________________________

 CHARLES KREGER

 Justice

Submitted on June 18, 2009

Opinion Delivered August 31, 2009



Before McKeithen, C.J., Kreger and Horton, JJ.
1. The Supreme Court in Stewart addressed what constitutes a "vessel in navigation"
under the Jones Act. The Supreme Court concluded that while the Jones Act does not define
the term "vessel," section 3 of the Rules of Construction Act provides the "default definition"
of "vessel" throughout the United States Code. Stewart, 543 U.S. at 490, see also 1 U.S.C.A.
§ 3 (West 2005). Pursuant to section 3, the Court recognized that in order to qualify as a
"vessel" under the Jones Act, a watercraft need only be "'used, or capable of being used, as
a means of transportation on water.'" 543 U.S. at 495 (quoting 1 U.S.C.A. § 3). Here, the
parties do not dispute whether the crane barge at issue is a "vessel in navigation" under the
Jones Act. Therefore, we need not address this component of the test. 
2. Reed is also Bailey's uncle.