Peter STANISLAWSKI, Appellant,

v.

UPPER RIVER SERVICES, INC.,
a Minnesota Corporation,
Appellee.

No. 92–2802.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1993.

Decided Oct. 1, 1993.

Karl L. Cambronne, Sandra J. McGoldrick-Kendall, Chestnut & Brooks, Minneapolis, MN, for appellant.

Kerry M. Evensen, Minneapolis, MN, for appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

Peter Stanislawski won a jury verdict and judgment from Upper River Services, Inc. (Upper River) under the Jones Act, 46 U.S.C.App. § 688, to compensate him for job-related injuries. The district court later amended the judgment to account for certain payments Upper River made to Stanislawski prior to trial. Stanislawski appeals the reduction of his recovery. We find that the district court did not properly calculate Stanislawski's damages under the peculiar rules of the Jones Act. Therefore, we reverse and remand for reentry of judgment.

## I. BACKGROUND

Stanislawski brought this action under the Jones Act seeking $626,000 in damages for injuries he sustained while working on a

barge operated by Upper River.[1] The jury returned a general verdict for Stanislawski and awarded damages of $200,000. Pursuant to a special interrogatory, the jury also determined that Stanislawski was seventy-five percent responsible for his own injuries, and that Upper River was only twenty-five percent responsible. Accordingly, the district court reduced the jury's verdict by seventy-five percent and entered judgment in the amount of $50,000.

Upper River moved to reduce the judgment to avoid duplicating $21,811.06 in payments it had already made to Stanislawski as a result of his injuries. Upper River claimed that it had already paid $13,131.06 to cover Stanislawski's medical expenses and $8,680 in wage compensation.

Stanislawski opposed Upper River's motion. He argued that Upper River's previous payments constituted "maintenance and cure" under admiralty law and that "maintenance" was not included in the court's judgment.[2] Stanislawski conceded that he erroneously asked the jury for $13,000 in past medical expenses that Upper River had previously paid as "cure," but he claimed that the $8,680 Upper River designated as wage compensation was actually "maintenance," and therefore was not included in the court's judgment. Furthermore, Stanislawski suggested that the court should make any reduction in the jury's verdict from the gross award of $200,000, instead of from the net award of $50,000. Under Stanislawski's formula, assuming that Upper River was entitled to credit for the full amount it requested, the amended judgment would be $44,547.24

($200,000 − $21,811.06 = $178,188.94 × .25 = $44.547.24).

The district court granted Upper River's motion to reduce the $50,000 judgment by $21,811.06 and entered an amended judgment in favor of Stanislawski for $28,188.94.[3] The court rejected Stanislawski's suggestion that any reduction in the amount of the judgment should be made from the gross jury award, reasoning that "[a]dding [Stanislawski's] proposed amended judgment of $44,547.24 to the $21,811.06 [which Upper River] has already paid would produce damages of $76,358.30 [sic], or 38 percent of $200,000."[4] Thus, Upper River would not be credited for the full seventy-five percent of fault the jury attributed to Stanislawski. According to the district court, in order to avoid double recovery by Stanislawski, Upper River's total payments must equal $50,000, which is twenty-five percent of the jury's verdict.

On appeal, Stanislawski argues that the district court erred in offsetting the medical expense payments from his net award instead of from his gross award. Stanislawski also contends that the district court should not have offset Upper River's "wage compensation" payments, since those payments were actually "maintenance" and were not duplicated in his Jones Act recovery.

## II. DISCUSSION

### A. Supplemental Wage Compensation

■ The district court found that $8,680 of the payments Upper River made to Stanislawski were "supplemental benefits" which duplicated Stanislawski's request to the jury

---

1. The specific damages requested in closing argument were:

| | |
|---|---|
| Past medical expenses | $ 13,000 |
| Past wage loss | $ 47,000 |
| Past pain and suffering | $ 60,000 |
| Future wage loss | $170,000 |
| Future pain and suffering | $336,000 |
| Total | $626,000 |

Joint Appendix at A6–A12.

2. "Maintenance and cure" refers to the duty the owner of a vessel has under admiralty law to compensate a seaman for food and lodging, and to pay for necessary medical expenses if the

seaman becomes ill or is injured in the service of the vessel. *Associated Electric Coop., Inc. v. Mid–America Transp. Co.*, 931 F.2d 1266, 1268 n. 2 (8th Cir.1991).

3. The amended judgment shows the amount of $28,199.94. The district court's order, however, correctly states the amount under the district court's formula as $28,188.94 ($50,000 − $21,-811.86 = $28,188.94). Since we reverse the district court's order, the arithmetical error in the amended judgment is of no consequence.

4. The correct calculation would be $44,547.24 + $21,811.06 = $66,358.30 or thirty-three percent of $200,000.

for past wage loss. *Stanislawski v. Upper River Services, Inc.*, CIV. 3–90–161, Order at 2 (D.Minn. July 10, 1992). Accordingly, the court concluded that this portion of the payments was duplicated in the jury's verdict which presumably included some amount of past wage loss. Stanislawski challenges the court's finding and claims that these payments constituted "maintenance" under admiralty law. Since Stanislawski did not ask the jury for "maintenance," he argues that the district court erred in reducing the judgment by the amount of these payments.[5]

■ We review the district court's factual findings for clear error and will not reverse the district court's account of the evidence if it is plausible in light of the record in its entirety. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").

■ The duty of a shipowner to pay "maintenance and cure" under admiralty law is not related to any finding of damages under the Jones Act. "Maintenance and cure" is a separate duty, arising from the contract of employment. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527, 58 S.Ct. 651, 652, 82 L.Ed. 993 (1938). It does not depend upon the negligence or culpability of the owner, and is not even restricted to those cases where the seaman's employment is the cause of the injury or illness. *Id.* Thus, a seaman is entitled to "maintenance and cure" payments in addition to any damages for negligence he or she might win under the Jones Act.

For some months after Stanislawski was injured and before trial, Upper River sent him checks which totalled $13,840. Affidavit of Kerry M. Evensen, Joint Appendix at A–21. Upper River alleges that these checks represent payments of $55 per day: $20 for maintenance and $35 in voluntary supplemental wage compensation. Upper River concedes that the $20 maintenance payments were not duplicated by the jury verdict, but contends that the $35 supplemental wage payments, which totalled $8,680, should be deducted from the judgment because Stanislawski included past wage loss in his request for damages.

Stanislawski argues that the entire $55 per day constituted maintenance and was not duplicated by the jury verdict. He points out that some of the checks in question, which he submitted to the district court, are designated either "Maint & Cure" or "Maintenance." He admits, however, having received a letter from Upper River's personnel administrator explaining that the checks represented $20 per day of maintenance and $35 per day of supplemental payments. Stanislawski's Brief at 9–10. The record also contains the affidavit of an Upper River attorney who explained that the "supplemental payments . . . were made as a voluntary supplemental payment to Mr. Stanislawski's wage loss." Upper River's Addendum at 2.

We cannot say that the district court clearly erred by crediting Upper River's affidavit and the letter received by Stanislawski over the inferences Stanislawski attempts to draw from notations on the checks. Accordingly, we will not disturb the court's conclusion that $8,680 of the original judgment constituted double payment.

### B. Double Recovery Formula

■ Although we agree with the district court that Stanislawski's right to "maintenance and cure" does not entitle him to double recovery, we find that the district court's formula for reducing the judgment takes away more than the amount of the double

---

5. Stanislawski also contends that the district court ignored the issue altogether. This contention is belied by the court's statement that it "agrees that [Upper River] is entitled to an amendment of the judgment in this case to credit [Upper River] for the medical expenses and *supplemental benefits* paid to [Stanislawski] prior to trial." *Stanislawski v. Upper River Services, Inc.*, CIV. 3–90–161, Order at 2 (D.Minn. July 10, 1992) (emphasis added). While it might have been preferable for the court to have detailed its reasoning, Stanislawski's statement that the court ignored the issue is without merit.

payment. Stanislawski created the confusion in the district court by mixing his request for previously paid medical expenses or "cure," a contract claim, with his request for damages on the Jones Act tort claims. In his closing argument, Stanislawski asked the jury for $626,000 in damages, including $13,000 Upper River had previously paid for "cure."[6] In effect, he asked the jury to award him $613,000 in tort damages, and $13,000 in contract damages that he had already received.[7] Clearly, the district court was correct to reduce its judgment to account for the double recovery. By subtracting the "cure" payments from the net judgment of $50,000, rather than the gross jury verdict of $200,000, however, the court imported comparative negligence into the "cure" payments. Upper River was under an implied contractual obligation to make "cure" payments. Unlike Jones Act claims, which may be reduced to account for the plaintiff's negligence, a plaintiff's comparative negligence has no effect on the shipowner's duty to pay for "cure." *Calmar S.S.*, 303 U.S. at 527, 58 S.Ct. at 652. Stanislawski was entitled to recover the full $13,000, regardless of fault. Thus, he is undercompensated by the amended judgment.

In order to avoid double recovery without undercompensating Stanislawski, medical expenses must be subtracted from the gross award. The result of this subtraction is the total tort damages awarded by the jury, which must then be reduced by 75% to account for Stanislawski's comparative negligence. Assuming that the jury awarded Stanislawski the full $13,000 he requested for medical expenses,[8] the correct formula is: ($200,000 − $13,000) × 25% = $46,750.

 The final step in our calculation is to correct Stanislawski's double recovery of past wage loss. Past wage loss is a proper component of Jones Act damages and thus, should be deducted from the net judgment, after the judgment has been reduced to account for Stanislawski's negligence. Accordingly, Stanislawski's Jones Act judgment for $46,750 must be reduced by $8,680,[9] to calculate the final judgment: $46,750 − $8,680 = $38,070.

## III. CONCLUSION

For the reasons discussed above, we reverse the district court's amended judgment and remand the case to the district court with directions to enter a judgment consistent with this opinion.

---

6. Neither party disputes that the medical expenses included in Stanislawski's request for damages constituted "cure" under admiralty law.

7. Upper River actually paid $13,131.06 for "cure." However, since Stanislawski asked the jury for only $13,000 in medical expenses, assuming that the jury awarded the full amount of the request, the jury awarded $13,000 in duplicate damages.

8. Stanislawski notes that it is impossible to know what portion, if any, of the jury's verdict constituted an award for medical expenses because the verdict was less than Stanislawski's request for damages and there were no special interrogatories delineating components of the general verdict. Stanislawski concedes, however, that the jury presumably awarded the full amount of "cure" he requested. Appellant's Brief at 6. Accordingly, we will construe the verdict as if it fully compensated Stanislawski for his medical expenses. *See Brister v. A.W.I., Inc.* 946 F.2d 350, 361 (5th Cir.1991) ("cure" payments deducted from general verdict); *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 451 (8th Cir.1984) (prior payments deducted from FELA general verdict).

9. Stanislawski concedes that if the $8,680 paid to him before trial is wages, Upper River is entitled to an offset in this amount. Appellant's Brief at 6. Accordingly, we construe the verdict as if the jury awarded Stanislawski the full amount requested. *See supra* note 8.