**Susan LARA, Plaintiff,**

v.

**HARVEYS IOWA MANAGEMENT CO., INC., and/or Harveys Casino, Defendant.**

**No. 1–98–CV–90058.**

United States District Court, S.D. Iowa, Western Division.

Aug. 8, 2000.

Howard M. Cohen, Birmingham, MI, for Plaintiff.

Thomas M. Locher, Omaha, NE, for Defendant.

## ORDER

PRATT, District Judge.

This matter comes on Defendant's Motion for Summary Judgment ("Motion") filed on May 16, 2000. Plaintiff filed her response on June 12, 2000, and a reply was filed by the Defendant on June 16, 2000. The Court held oral argument on this Motion on July 13, 2000 at the United States Courthouse in Des Moines, Iowa. The matter is fully submitted.

### I. Facts

The Court will set out the facts in this case in a light most favorable to Plaintiff as the non-moving party. *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). During the time period relevant to this lawsuit, Plaintiff Susan Lara ("Lara") was a cocktail server and bartender on board the M/V Kanesville Queen ("Kanesville Queen"), a riverboat casino owned by Defendant Harveys Iowa Management Co., Inc., and/or Harveys Casino ("the casino"). On or about February 22, 1998 while working on board the Kanesville Queen, Plaintiff injured her arms, shoulders, and neck when her foot fell into an open floor drain behind the bar. On November 20, 1998, Lara filed the instant lawsuit against the casino seeking damages under both the Jones Act, 46 U.S.C.App. § 688,[1] and general admiralty and maritime law. On July 6, 2000, Lara filed a Second Amended Complaint (here-inafter "the Complaint") to plead an alternative claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The basis for the casino's Motion is that Lara did not face the "perils of the sea" and thus was not a "seaman" for purposes of the Jones Act. Lara contends there is sufficient evidence for a jury to find her a "seaman" within the meaning of the Act. And as requested in her Complaint, she wants a jury to try all the issues in this lawsuit. The Court finds there exists a genuine issue of material fact going to Lara's status as "seaman." Since the Jones Act provides a federal negligence cause of action for injured seamen, and because the resolution of negligence claims are almost always matters for the jury to decide, the Court will not grant the Defendant's Motion. As additional facts become necessary to its analysis, the Court will set them out accordingly.

### II. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the context of a Jones Act claim, "the question of

---

1. Under the Jones Act, "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury...." 46 U.S.C.App. § 688. By its terms, only a "seaman" is entitled to recovery under the Jones Act. Unfortunately, the term "seaman" is not defined in the statute. The term is given a somewhat unhelpful definition in the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950. The LHWCA provides recovery to injured land-based maritime workers, but explicitly excludes from its coverage "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). The Supreme Court has thus equated "master or member of a crew of any vessel" under the LHWCA with "seaman" under the Jones Act. *See McDermott Int'l v. Wilander*, 498 U.S. 337, 347–48, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The Eighth Circuit has stated the relationship thus: "[A]ny person covered by the Jones Act is excluded from coverage under the LHWCA and vice versa." *Johnson v. Continental Grain Co.*, 58 F.3d 1232, 1235 (1995) (citation omitted).

who is a . . . 'seaman,' is better characterized as a mixed question of law and fact." *McDermott Int'l v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The term "seaman" is a statutory term, and its interpretation is a question of law. *Id.* "The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and employee's precise relation to it." *Id.* If a reasonable jury, applying the proper legal standard, could differ as to whether Lara was a "seaman," it is a question for the jury. *See id.* Put another way, "summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

### III. Jones Act standards

In relevant part, the Jones Act provides a federal negligence cause of action to "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C.App. § 688(a). The term "seaman" was left undefined in the statute. After years of grappling with the definition of the statutory term "seaman," *see Chandris, Inc. v. Latsis,* 515 U.S. 347, 357–368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (discussing doctrinal development); *McDermott Int'l v. Wilander,* 498 U.S. 337, 341–53, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (same), the Supreme Court finally settled on two "essential requirements" for seaman status: "First, an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission. Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." *Harbor Tug and Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) (citing *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172). "The fundamental purpose of this substantial connection requirement," explained the Court in *Chandris,*

> is to give full effect to the remedial scheme created by Congress and to sep-

arate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. [Citing an admiralty treatise,] "[i]f it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied."

*Chandris,* 515 U.S. at 368–69, 115 S.Ct. 2172 (citation omitted). "The duration of a worker's connection to a vessel and the nature of the worker's activities," continued the Court, "determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370, 115 S.Ct. 2172.

Citing language from the Supreme Court's most recent Jones Act case, the Defendant points out that inquiry into seaman status must focus on whether the employee's duties "take him to sea," *Harbor Tug,* 520 U.S. at 555, 117 S.Ct. 1535, and therefore expose him to the "perils of the sea," *id.* at 560, 117 S.Ct. 1535. Although one who is injured while "out to sea" will most likely qualify for recovery against the ship's owner under the Jones Act, *see, e.g., Chandris,* 515 U.S. at 377, 115 S.Ct. 2172 (Stevens, J., concurring) (although he would leave "more ambiguous, shore-based cases" for another day, in his judgment, "an employee who is injured at sea in the course of his employment is always a 'seaman' "), it does not necessarily follow that only sea-faring employees can enjoy Jones Act protection. The Supreme Court has made clear over the years that injury at sea is not dispositive in the determination of a worker's seaman status. *See, e.g., Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 372–73, 77

S.Ct. 415, 1 L.Ed.2d 404 (1957) (handyman on board a dredge held to be a "seaman;" fact the dredge was anchored to shore and that the injury occurred on land not controlling)[2]; *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 43, 63 S.Ct. 488, 87 L.Ed. 596 ("[T]he Jones Act, in extending a right of recovery to the seaman injured while in the service of his vessel by negligence, has done no more than supplement the remedy of maintenance and cure for injuries suffered by the seaman, *whether on land or sea* ....") (citing *Pacific S.S. Co. v. Peterson,* 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928) (emphasis added)); *see also Chandris,* 515 U.S. at 360, 115 S.Ct. 2172 (recognizing crew members' rights under the Jones Act "to recover ... when injured while pursuing their maritime employment *whether on board ... or on shore*") (citing *Swanson v. Marra Bros.,* 328 U.S. 1, 7–8, 66 S.Ct. 869, 90 L.Ed. 1045 (1946) (emphasis added)). In short, inquiry into whether an employee's duties "take him to sea" remains an important, but by no means sole, component of the "seaman" status inquiry.

Quite apart from a formalistic rule reserving seaman status only for those injured "at sea," the Supreme Court has cautioned that "the jury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider *all relevant circumstances* bearing on the two elements outlined above." *Chandris,* 515 U.S. at 369,

115 S.Ct. 2172 (emphasis added). The cases admit of no bright line rule in determining whether an injured worker is substantially connected to a vessel. This only makes sense given the "myriad circumstances in which men go upon the water." *Id.* at 356, 115 S.Ct. 2172. The circumstances surrounding Plaintiff's accident arguably fall in the "twilight zone" between a purely land- and sea-based injury, *see Davis v. Department of Labor and Indus.,* 317 U.S. 249, 256, 63 S.Ct. 225, 87 L.Ed. 246 (1942) (noting a "twilight zone" facing workers as their sea-related injuries arguable fall within both state workers' compensation laws and the LHWCA). Thus, the Court is not confronted with a "discreet class[ ] of maritime employees, but rather with a spectrum ranging from the blue-water seaman to the land-based longshoreman." *Id.* (quoting *Brown v. ITT Rayonier, Inc.,* 497 F.2d 234, 236 (5th Cir.1974)). By necessity, then, determining seaman status is a "fact specific" inquiry, *McDermott,* 498 U.S. at 356, 111 S.Ct. 807; *Harbor Tug,* 520 U.S. at 550, 117 S.Ct. 1535, that "must be given workable and practical confines," *Harbor Tug,* 520 U.S. at 558, 117 S.Ct. 1535.

## IV. Discussion

Mindful of these legal guidelines, the Court turns now to an analysis of whether Lara was a Jones Act "seaman" on or around February 22, 1998 when she was injured while working on board the Kanesville Queen. As an initial factual matter, the record in this case strongly indicates

---

**2.** Most of *Senko,* including the proposition on which this Court relies, remains good law. The Supreme Court in *McDermott,* 498 U.S. at 352–53, 111 S.Ct. 807, disavowed *Senko* only to the extent *Senko* asserted an "aid in navigation" requirement to seaman status. Under this requirement, which *McDermott* abolished, an injured maritime worker was denied seaman status unless he could prove he assisted in the navigation of the ship. *See McDermott,* 498 U.S. at 343, 111 S.Ct. 807. Now of course, as explained at page 3 of this Order, a worker need only show he somehow contributes to the "function of the vessel or to the accomplishment of its mission."

The proposition in *Senko* that shore- or land-based injuries are compensable under the Jones Act retains vitality however. *See Chandris,* 515 U.S. at 375, 115 S.Ct. 2172 (citing with approval the language in *Senko* that "[e]ven a transoceanic liner may be confined to berth for lengthy periods, and while ... the ship is kept in repair by its 'crew' ... [t]here can be no doubt that a member of its crew would be covered by the Jones Act during this period, even though the ship was never in transit during his employment").

that the casino itself unequivocally treated Lara as a Jones Act worker.

First, the casino's employee handbook at page 10, under a section captioned "On–The–Job–Injuries," states: "All employees are covered under the State Workers' Compensation or Jones Act provisions (any employee who spends 30% or more of their working time on the boat) for on-the-job-injuries." Pl.'s Ex. G. Shortly after Lara's accident, there was filed on March 2, 1998 in the casino's Benefits Office a document entitled "RETURN TO WORK VERIFI-CATION," printed on the casino's letter head. See Pl.'s Ex. F (hereinafter "re-turn-to-work form"). At the bottom of this return-to-work form, there appear handwritten comments specifying the Plaintiff's work restrictions. At the top of the form, the casino's benefits representa-tive has placed an "X" on the line next to a category labeled "Employee Injury Boat/ J.A.—pending." To a reasonable person, this marking is self-evident: that the casi-no has elected to treat Lara's injury as a sea-based Jones Act employee.

Tellingly, there were four other enumer-ated status categories under which the benefits representative could have catego-rized Plaintiff's situation: "Unpaid/Family Medical—LOA"; "Disability (Own Medi-cal)"; "Employee Injury Land/W.C.—pending"; and "Personal." The return-to-work form, which bears the signature of the benefits representative, Jody Anderson, reflects the casino's conscious decision to designate Lara's accident a sea-based injury under the Jones Act and not a land injury requiring workers' compensa-tion benefits. Significantly, the Benefits Office placed eight such return-to-work forms (for a total of nine such forms) in Plaintiff's file, all unambiguously affirming the casino's desire to treat her as a Jones Act employee. From the outset and con-sistent with the express provisions of its employee handbook, the casino viewed the Plaintiff's February 22, 1998 incident as an on-the-job Jones Act injury.

In addition to these nine return-to-work forms expressing the casino's intention to treat Plaintiff's injury as falling within the Jones Act, the Plaintiff has submitted a document entitled "Notice of Claim Accep-tance," dated March 20, 1998. See Pl.'s Ex. D. This document is a one-page letter from the casino's third party administrator for workers' compensation, W.R. Gibbens, Inc. ("Gibbens"), notifying Plaintiff of her entitlement to maritime maintenance and cure payments. In relevant part, the No-tice of Claim Acceptance states:

> Dear Ms. Lara,
>
> ... The claim filed on your behalf has been reviewed and accepted. Our goal, together with your employer, is to as-sure that you receive prompt and satis-factory medical care enabling an ade-quate recovery.
>
> As an employee preforming [sic] at least 30% of your duties aboard the M/V Kanesville Queen, you are classified as a Jones Act Seaman under Federal Mari-time Law. According to Federal Mari-time Law, you are entitled to Mainte-nance and Cure. Cure refers to payment of medical bills and maintenance refers to a daily rate of $15.00 per day if you are unable to return to work due to your injury. * * *
>
> Again, it is the intention of your employ-er and W.R. Gibbens, Inc., to provide you the very best of service during this time[;] please do not hesitate to call.
>
> Very truly yours,
>
> W.R. Gibbens, Inc.

Pl.'s Ex. D. Gibbens sent a copy of this letter to the casino's benefits representa-tive. The record does show, nor does the casino assert, that the casino objected to these representations made by Gibbens. Consistent with this Notice of Claim Ac-ceptance, the casino, in response to one of Plaintiff's interrogatories, admitted that $951.45 in lost wages and several thousand dollars in "[c]ure payments," Pl.'s Ex. E, were made to, or on behalf of, the Plaintiff.

The casino downplays any significance that could attach to these maintenance and cure payments because they were "actually paid by a third-party" (Gibbens) and not the casino itself. Def.'s Reply Br. at 4–5. That position is hardly maintainable given the express approval by the casino's benefits representative to treat Plaintiff as a Jones Act employee. The casino's overall conduct toward Lara is clearly relevant to establishing her status as a seaman. *See, e.g., Savoie v. Otto Candies, Inc.,* 692 F.2d 363, 367–68 (5th Cir.1982) (payment of maintenance by the employer is relevant to the ultimate factual inquiry concerning seaman status at the time of injury). To disregard the casino's policy and practice regarding treatment of one of its injured casino boat workers would undermine a critical goal of the Act itself—namely, "the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act." *Harbor Tug,* 520 U.S. at 558, 117 S.Ct. 1535 (quoting *Chandris,* 515 U.S. at 363, 115 S.Ct. 2172). In other words, the Defendant, for whatever reason, has structured its employee benefit plan to account for accidents like the Plaintiff's. This is a business arrangement the court will not upset or second guess. The Court therefore finds that a jury viewing this record in a light most favorable to Lara could reasonably conclude she was in fact a Jones Act seaman.

Even absent this affirmative conduct by the casino, there is a sufficient record for a jury to conclude Lara was a Jones Act "seaman" as required by the two-part test in *Chandris.* The casino concedes that the first requirement is met, i.e., that she was contributing to the function of the ship: Lara's work directly supported the money-making and entertainment function of the Kanesville Queen. Moreover, the casino admits that the Kanesville Queen was a "vessel in navigation." *See Chandris,* 515 U.S. at 374, 115 S.Ct. 2172 ("[A] vessel is in navigation, although moored to a dock, if it remains in readiness for another voyage.") (quoting 2 M. Norris, *Law of Seamen* § 30.13 at 363 (4th ed.1985)).

The thrust of the Defendant's argument is that Lara is not a seaman with a "connection" to the vessel that is "substantial in terms of both its duration and its nature." The casino asserts that Lara was not a "seaman" because her duties never "took her to sea" and therefore never exposed her to the "perils of the sea."

That Lara never worked on board the Kanesville Queen while the ship was in transit cannot be denied. However, as stated above, being at sea is not dispositive in the determination of seaman status. There are facts here on which a reasonable jury could find that Lara was substantially connected to the Kanesville Queen in both duration and nature. By way of example, although the Kanesville Queen is outfitted with modern-day amenities like satellite and cable television, it remains a fully operational riverboat casino, equipped with all the accounterments of a sea-faring vessel. There is a captain, and he is helped by six deckhands, a mate, chief engineer, and an assistant engineer. According to the captain, the ship is powered by several electric generating engines as well as propellers which hold 6,000 gallons of fuel. It has life-preservers on board for the passengers and crew. There are two rescue boats aboard the Kanesville Queen, and the vessel is annually inspected the by United States Coast Guard. The captain's crew trains for emergencies like fire and rescue operations on a weekly basis. During the 7–month excursion season, which runs from April 1 through October 31 each year, the Kanesville Queen makes approximately 100 trips per year along the Missouri River. *See* 491 Iowa Admin. Code § 25.13(1)-(3). Excursions are scheduled during the morning, during which time the ship travels 3 miles up the river and then returns to shore. The Kanesville Queen typically cruises with 50 to 350 passengers. During the 5–month off-season, the ship is moored to the shore with cables and ropes. Lara was injured during the off-season.

From her deposition and affidavit testimony, the Plaintiff began work for the casino in November of 1995. She considered herself an excellent worker, and the Court found nothing in the record to dispute that. Often she was asked to train other casino employees. The vast majority of Lara's work as a cocktail server and bartender was performed on board the Kanesville Queen. Her shift ran from 2:00 p.m. to 10:00 p.m. five days a week, though on occasion she worked extra hours on board the ship either before or after her shift to make up for lost time from training employees on land. At the time of her injury, Plaintiff was working in the "well" of the poker bar on the enclosed deck of the vessel pursuant to her duties as cocktail server and bartender. In August of 1998, Lara was terminated by the casino.

A jury could find that, even though Lara was injured while the vessel was docked, she was nevertheless substantially connected to it in terms of both duration and nature. During her tenure with the casino, she spent most of her working hours on board the Kanesville Queen located on the Missouri River doing that ship's work—serving drinks, clearing tables, and otherwise attending to the ship's customers. In *Chandris,* the Supreme Court approved a rule-of-thumb wherein one who spends greater than 30% of his time on board a ship satisfies the seaman test. 515 U.S. at 371, 115 S.Ct. 2172. Clearly the record suggests that Plaintiff meets this minimum threshold. "If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied." *Chandris,* 515 U.S. at 368–69, 115 S.Ct. 2172 (citation omitted). Given that Lara routinely worked on Defendant's fully operational ship located on the Missouri River, a reasonable jury could conclude she was a sea-based, Jones Act employee. *See Harbor Tug,* 520 U.S. at 555, 117 S.Ct. 1535 (citing *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172); *see also Roth v.*

*U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 709 (8th Cir.1994) (to be a seaman, "an employee must be assigned to a ship, owing his allegiance to a vessel and not solely to a land-based employer") (citation and quotation marks omitted).

To hold as a matter of law that Plaintiff was not a "seaman" within the meaning of the Act would undermine its broad remedial purpose, *see Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949) ("[T]his statute is entitled to a liberal construction to accomplish its beneficent purposes."), and with it the right of Plaintiff, as an injured maritime employee, to have access to any remedy under the law at all. In this regard, the Court notes that the Iowa Workers' Compensation Commissioner has consistently found jurisdiction lacking regarding claims submitted by injured employees of riverboat casinos. *Engler v. Ameristar, II,* No. 1216414 (Oct. 29, 1999) (employee's workers' compensation claim for on-board injury preempted by Jones Act); *Trumbauer v. Ameristar Casino,* No. 1133774 (Oct. 29, 1999) (same); *Cassatt v. Lady Luck Casino,* No. 1232051 (July 28, 1999) (same); *Long v. Dubuque Diamond Jo Casino,* No. 1169282 (July 8, 1998) (same); *Wooldridge v. Argosy Gaming Co.,* No. 1059338 (May 9, 1996) (same); *see also Hayden v. Ameristar Casino,* No. A.A. 3383 (Iowa Dist.Ct. July 14, 2000) (affirming the Commissioner's decision to dismiss for lack of subject matter jurisdiction). Clearly then, a remedy under state law is foreclosed. Holding, as a matter of law, that Plaintiff is not a seaman, would strip her of any remedy under federal law as well. Congress could not have intended such a result. The Jones Act, it must be remembered, was expressly passed in 1920 to provide a negligence remedy for injury or death where state and federal law at the time did not. *See* Charlene M. Davis, *Federal Supersession of State Workers' Compensation Acts as Applied to Jones*

*Act Seamen,* 8 U.S.F. Mar. L.J. 185, 194–96 (1996).[3]

As the Court earlier observed, this case defies simple categorization. However, that's not a reason to grant summary judgment. On this record, and even apart from the casino's conduct in treating Lara as a Jones Act employee, a jury could reasonably find that she was a maritime employee substantially connected in terms of duration and nature to a fully functioning gaming vessel located on the Missouri River. Accordingly, they could find her a Jones Act "seaman" within 46 U.S.C. § 688.[4] *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000) (class of former riverboat casino employees with respiratory illnesses alleged defective air-conditioning and ventilating system: common issues existed with respect to, *inter alia,* class members' status as Jones Act "seamen"); *Weaver v. Hollywood Casino,* 2000 WL 705995 (N.D.Ill. May 22, 2000) (slot machine attendant injured on board gambling boat found to be a Jones Act "seaman"); *Wiora v. Harrah's Illinois Corp.,* 68 F.Supp.2d 988 (N.D.Ill.1999) (waitress on riverboat casino was a Jones Act "seaman"); *Greer v. Continental Gaming Co.,* 5 S.W.3d 559 (Mo.Ct.App. 1999) (trial court affirmed and reversed in part; trial court's decision that since riverboat casino was "in navigation," injured housekeeper was a Jones Act "seaman" affirmed); *see also Nemesio v. Belle of*

*Sioux City, L.P.,* No. C98–4078–DEO (N.D. Iowa June 6, 2000) (final jury instructions in a Jones Act case before Senior United States District Judge Donald E. O'Brien involving an injured card dealer on board the riverboat Belle of Sioux City).

### V. Conclusion

Because this is not a case in which "the facts and law will reasonably support only one conclusion," *McDermott,* 498 U.S. at 356, 111 S.Ct. 807 (citation omitted), Defendant's Motion for Summary Judgment is **denied**.

**IT IS SO ORDERED.**

---

**3.** Prior to passage of the Jones Act in 1920, state law remedies for negligently-caused injury or death were preempted by federal admiralty law, which did not provide a negligence cause of action. *See Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Thus, the Jones Act was mostly a response to the fact that *"Chelentis* left seamen injured by the negligence of a crew member without a remedy against a vessel owner, while *Jensen* left maritime workers injured on seaward of the waters edge without a no-fault remedy against their employers." Davis at 196.

**4.** The Court is mindful that other jurisdictions, *see Ketzel v. Mississippi Riverboat Amusement, Ltd.,* 867 F.Supp. 1260 (S.D.Miss. 1994); *Thompson v. Casino Magic Corp.,* 708 So.2d 878 (Miss.1998); *Lane v. Grand Casinos of Mississippi, Inc.,* 708 So.2d 1377 (Miss. 1998), and even a judge from this Court, *see Valcan v. Harveys Casino,* No. 1–98–CV–80067 (N.D. Iowa June 15, 2000) (Wolle, J.), have gone the other way on this question.

The cases from other courts are not binding on this Court, or are distinguishable on their facts. To the extent this Order creates or contributes to a "split" within the Southern District of Iowa, that conflict no doubt will be resolved by the Eighth Circuit.