Constance **FREDERICK**, Plaintiff,

v.

**HARVEY'S IOWA MANAGEMENT CO., INC. and David Fulkerson, Defendants.**

No. 1–00–CV–10030.

United States District Court, S.D. Iowa, Western Division.

Aug. 2, 2001.

Dennis M. O'Bryan, John E. Drumm, O'Bryan Law Center PC, Birmingham, MI, Michael J. Davenport, Willson & Pe-

chacek, PLC, Council Bluffs, IA, for plaintiff.

Thomas M. Locher, Donald J. Pavelka, Jr., Robyn R. Loveland, Locher Cellilli Pavelka & Dostal LLC, Omaha, NE, for defendants.

ORDER

LONGSTAFF, Chief Judge.

The Court has before it defendant Harvey's motion for summary judgment and supporting brief filed June 1, 2001. Plaintiff Constance Frederick filed a resistance and a supporting brief on July 18, 2001. The motion is now considered fully submitted.

The Court will set out the facts in a light most favorable to the plaintiff as the non-moving party. *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). From January 1, 1996 to the present. Harvey's Iowa Management Company, Inc. employed plaintiff Constance Frederick as a casino dealer on the M/V Kanesville Queen, a 272–foot steel excursion vessel which operates as a riverboat casino on the Missouri River. The riverboat makes early morning cruises during the April through October excursion season. Frederick's regular schedule required her to work on the riverboat only when it was docked.[1] In this suit based upon the Jones Act, 46 U.S.C. app. § 688. Frederick seeks recovery from Harvey's Casino for an injury to her hand and wrist which she sustained when dealing to a casino patron while the vessel was docked on October 24, 1999. Further facts regarding the incident leading to the injury will be set forth as relevant later in this Order.

---

1. Frederick cruised on a few occasions, but these were not during her regularly scheduled     working hours.

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact must have a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

■ In the context of a Jones Act claim, "the question of who is a ... 'seaman,' is better characterized as a mixed question of law and fact." *McDermott Int'l v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The term "seaman" is a statutory term and its interpretation is a question of law. *Id.* However, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and employee's relationship to it." *Id.* If a reasonable jury, applying the proper legal standard, could differ as to whether the plaintiff is a "seaman," it is a question for the jury. *Id.*

■ The Jones Act provides a federal cause of action for acts of negligence for "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C. app. § 688(a). The United States Supreme Court in *Chandris* set forth the standard for determining whether an employee is a Jones Act "seaman." *Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). The standard is two-pronged: the worker's duties must contribute to the function of the vessel or the accomplishment of the

vessel's mission; and the worker must have a connection to a vessel in navigation that is substantial in both duration and nature. *Id.* at 368, 115 S.Ct. 2172. The Court explained,

> The fundamental purpose of the substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied.... The duration of a worker's connection to a vessel and the nature of the worker's activities determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Id.* at 368–70, 115 S.Ct. 2172. Two years later, the Court further clarified the substantial connection requirement stating, "the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea" and expose him to the "perils of the sea." *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 555 and 560, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).

■ Defendant contends it is entitled to summary judgment because no reasonable jury could find Frederick is a "seaman" as required for recovery under the Jones Act. Defendant concedes Frederick's duties as a casino dealer contribute to the function

of the vessel or the accomplishment of the vessel's mission as a riverboat casino. However, defendant argues because Frederick's regularly assigned duties did not take her to sea and expose her to the "perils of the sea," she does not meet the definition provided by *Chandris* and *Harbor Tug.*[2]

The federal district court in the Southern District of Iowa has previously addressed this issue on two occasions, both dealing with the vessel in the present case, coming to two different conclusions. In *Valcan v. Harvey's Casino,* Judge Wolle granted summary judgment on the Jones Act coverage issue on the basis that no reasonable jury could find a cocktail server who was injured during her employ with Harvey's on the same riverboat as the present case was a "seaman" because the plaintiff only worked when the riverboat was docked. *Valcan v. Harvey's Casino,* 2000 U.S. Dist. LEXIS 12744 (S.D.Iowa 2000). Judge Wolle found the key factor to be the requirement of *Harbor Tug* that the employee's duties must actually take him to sea and expose him to its perils. *Id.* (citing *Harbor Tug,* 520 U.S. at 555 and 560, 117 S.Ct. 1535). Because plaintiff never worked while the ship was cruising, the court found she did not meet the second prong of *Chandris* as clarified by *Harbor Tug. Id.*

Following Judge Wolle's reasoning, Frederick similarly would not be a seaman under the Jones Act because her regular duties did not actually take her to sea and expose her to the sea's perils. Leisha Brockman, an employment representative for Harvey's Casino, has submitted an affidavit detailing the occasions when Frederick worked while the ship was cruising. Those records show fourteen times when Frederick worked a shift while the ship was cruising. *See* Affidavit of Leisha Brockman. Frederick described these times as "an occasional thing" that occurred only if she filled in for someone because she had a personal scheduling conflict Plaintiff's Deposition, p. 106. However, Frederick does not argue these fourteen occasions are the basis for her status as a Jones Act employee.[3] Instead, she asserts she meets the *Chandris* test because she has a substantial connection to a vessel in navigation in both duration and nature even if she had never cruised.

In *Lara v. Harvey's Iowa Management Co., Inc.,* Judge Pratt denied a motion for summary judgment on this issue finding a jury could reasonably conclude plaintiff was a Jones Act employee despite evidence plaintiff was never at sea during her shift. *Lara v. Harveys Iowa Management Co., Inc.,* 109 F.Supp.2d, 1031, 1037 (S.D.Iowa 2000). Judge Pratt disagreed with Judge Wolle's interpretation of *Harbor Tug* that the absence of being at sea and exposed to its perils was dispositive. *Id.* The Court found language in Harvey's employee handbook as well as a series of return to work verification forms to be "self-evident ... that the casino has elected to treat [plaintiff's] injury as a sea-based Jones Act employee." *Id.* at 1035. Judge Pratt stated, "[t]he casino's overall conduct toward [plaintiff] is clearly relevant to establishing her status as a seaman." *Id.* at 1036. "[T]o disregard the casino's policy and practice regarding treatment of one of its injured casino boat workers would undermine a critical goal of the Act itself-name-

---

2. Defendant does not dispute the vessel in question is a "vessel in navigation" as required by the second prong.

3. The evidence suggests that of the entire time Frederick has worked for Harveys, perhaps 0.04% of her work hours occurred while the vessel was cruising. (*See* Affidavit of Leisha Brockman, Harvey's Employment Representative).

ly, 'the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act.' " *Id.* (quoting *Harbor Tug,* 520 U.S. at 555, 117 S.Ct. 1535.) Judge Pratt therefore concluded a reasonable jury could conclude the plaintiff was a "seaman." *Id.*[4]

In the present case, there is also evidence Frederick was treated as a Jones Act employee. Harvey's employee handbook has a section entitled "On–the–Job Injuries" which states "all employees are covered under the State Workers' Compensation or Jones Act provisions (any employee who spends 30% or more of their working time on the boat) for on-the-job injuries."[5] After Frederick's injury, Harvey's internal records show she sustained an "On the Job Injury" with a checkmark next to "Maintenance and Cure." *See* Plaintiff's Exhibit C. Further, there was a "Return to Work Verification" form with a notation of "Employee Injury Boat/J.A. (Pending)."[6] *See* Plaintiff's Exhibit D. Frederick's medical bills and benefits were paid from an account named "Kanesville Queen, Jones Acct." *See* Plaintiff's Exhibit E.[7] Following Judge Pratt's reasoning, because the casino treated Frederick as a Jones Act employee, summary judgment should be denied because a reasonable jury could find on these facts plaintiff is a "seaman."

Judge Pratt also found a reasonable jury could conclude the plaintiff in *Lara* to have a "substantial[ ] connect[ion] to [the riverboat] in terms of both duration and na-

ture." *Id.* at 1037. The Court pointed to the *Chandris* standard wherein an employee who spends more than 30% of his working time onboard a ship satisfies the "seaman" test under the Jones Act. *Id.* (citing *Chandris,* 515 U.S. at 371, 115 S.Ct. 2172). The plaintiff in *Lara* had spent most of her working hours, certainly more than 30%, on the ship serving drinks and attending to customers. *Id.* Therefore, the court found plaintiff could be found to be a Jones Act seaman despite the fact the ship was always docked when she was working. In the present case, plaintiff's duties dealing casino games always occurred on-board the vessel. Applying Judge Pratt's analysis, Frederick could similarly be found to be a "seaman."

Judge Pratt also pointed to the Iowa Workers' Compensation Commissioner's line of decisions denying jurisdiction to claims submitted by injured employees of riverboat casinos. *Id.* (citing *Engler v. Ameristar, II,* No. 1216414 (Oct. 29, 1999)) (employee's worker's compensation claim for on-board injury preempted by Jones Act); *Trumbuuer v. Ameristar Casino,* No. 1133774 (Oct. 29, 1999) (same); *Cassatt v. Lady Luck Casino,* No. 1232051 (July 28, 1999) (same); *Long v. Dubuque Diamond Jo Casino,* No. 1169282 (July 8, 1998) (same); *Wooldridge v. Argosy Gaming Co.,* No. 1059338 (May 9, 1996) (same); *Hayden v. Ameristar Casino,* No. A.A. 3383 (Iowa Dist.Ct. July 14, 2000) (affirming the Commissioner's decision to dismiss for lack of subject matter jurisdiction).

**4.** Judge Pratt noted, "The Court is mindful that other jurisdictions and even a judge from this Court have gone the other way on this question. The cases from other courts are not binding on this Court, or are distinguishable on their facts. To the extent this Order creates a 'split' within the Southern District of Iowa, that conflict no doubt will be resolved by the Eighth Circuit." *Lara,* 109 F.Supp.2d at 1038, n. 4 (internal citations omitted).

**5.** This is the same handbook language referenced and relied upon in *Lara.*

**6.** In this context, the Court logically concludes "J.A." is an abbreviation for "Jones Act."

**7.** The documents also have a heading of "Harvey's Iowa Management Company Workers' Compensation Account." *See* Plaintiff's Exhibit E.

Judge Pratt concluded a remedy under state law is foreclosed and to deny Jones Act coverage would deny plaintiff of a remedy entirely. *Id.* Judge Pratt reasoned that such a result would be contrary to the Jones Act's broad remedial purpose. *Id.* (citing *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949) ("[T]his statute is entitled to a liberal construction to accomplish its beneficent purposes.")). It appears there would be a similar result were this Court to deny Jones Act coverage at the summary judgment stage.

Having carefully considered the relevant legal precedent, this Court concurs with Judge Pratt's decision in *Lara.* Accordingly, the Court determines a reasonable jury could deem Frederick a Jones Act "seaman." A jury could find Defendant Harvey's has elected to treat Frederick as such and could find Frederick has a substantial connection to a vessel in navigation in terms of both duration and nature. Furthermore, to deny coverage would result in a complete denial of a remedy for what may be an actionable injury.

This does not end this Court's inquiry, however, as Harvey's has also moved for summary judgment on the ground Frederick has failed to demonstrate a prima facie case of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees. 46 U.S.C. app. § 688; *see De Zon v. American President Lines,* 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943). FELA provides recovery to railroad workers injured because of employer negligence, 45 U.S.C. § 51; *see Heater v. Chesapeake and Ohio Ry. Co.,* 497 F.2d 1243, 1246–47 (7th Cir.1974). The statute does not define negligence, but leaves the question to be determined "by the common law principles as established and applied in the federal courts." *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The definition of negligence is a federal question which does not vary in accordance with differing conceptions of negligence among the states. *Id.*

■ It is generally accepted the requirements for a finding of negligence under FELA are: 1) a duty owed to the plaintiff by the employer; 2) a breach of that duty; and 3) a causal link between plaintiff's injury and the employer's breach. *See, e.g., Green v. River Terminal Ry. Co.,* 763 F.2d 805, 808 (6th Cir.1985). In determining whether a jury question is present, the Court is narrowly limited to a single inquiry of whether a reasonable conclusion may be drawn that negligence of the employer played *any part at all* in the injury. *Inman v. Baltimore & O.R. Co.,* 361 U.S. 138, 139, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959) (emphasis added).[8] " 'It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes ....' " *Clark v. Central States Dredging Co.,* 430 F.2d 63, 66 (8th Cir. 1970) (quoting *Rogers v. Mo. Pac. R.R.,* 352 U.S. 500, 506–507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). "A finding of negligence in admiralty is a finding of fact." *Lone Star Industries v. Mays Towing Co., Inc.,* 927 F.2d 1453, 1456 (8th Cir.1991). *Pac. R.R.,* 352 U.S. 500, 506–507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). "A finding of negligence in admiralty is a finding of fact." *Lone Star Industries v. Mays Towing Co., Inc.,* 927 F.2d 1453, 1456 (8th Cir.1991).

---

**8.** The duty of a shipowner to pay "maintenance and cure" under admiralty law is not related to a finding of negligence under the Jones Act. "Maintenance and cure" is a separate duty arising from the employment contract. *Stanislawski v. Upper River Services, Inc.,* 6 F.3d 537, 540 (8th Cir.1993).

■ Harvey's has admitted for purposes of this motion it owes a duty to its employees to provide a reasonably safe place of work. The issue is whether Harvey's actions or inaction resulted in a breach of that duty in this instance.

In order to establish a breach of duty, a plaintiff must show the employer "knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect [plaintiff] and other similarly situated employees" *Urie*, 337 U.S. at 177, 69 S.Ct. 1018. In determining whether an employer in the exercise of due care "should have known" of a danger, on analysis of whether the injury was "reasonably foreseeable" is required. *Id.* An employer is not liable for failing to provide a safe workplace if there is no reasonable way of knowing a potential hazard exists. *Gallose v. Long Island R. Co.*, 878 F.2d 80 (2nd Cir.1989). Frederick alleges Harvey's failed to provide a safe place for her to work because it knew David Fulkerson, the individual who is alleged to have struck Frederick, had "violent tendencies" yet did nothing to protect her from him. Defendant argues it had no knowledge and in the exercise of due care, could not have known an injury would occur to Frederick because Fulkerson committed an unforeseeable criminal act of assault.

A brief statement of the incident is helpful at this point. On October 24, 1999, at approximately 1:35 p.m., Frederick was dealing blackjack. She had been dealing at Table 303 for approximately ten minutes to David Fulkerson and Bud Stein when Fulkerson lost a round. As Frederick moved her right hand across the table to collect the chips Fulkerson had wagered and lost, Fulkerson brought his open hand down on hers, knocking the chips across the table. Frederick then states that she became scared, but continued dealing to Fulkerson. Frederick's right hand and wrist were injured but she completed her shift.

In response to Harvey's denial that it knew Fulkerson to be a threat, plaintiff has presented deposition testimony from Michael Monaghan, a high limit blackjack dealer, who routinely dealt to Fulkerson prior to this incident. *See generally* Deposition of Michael Monaghan. Monaghan testifies he has personally observed Fulkerson slamming the table with his fist, cussing, and verbally abusing the dealers. He further states that on a number of occasions he had seen Fulkerson pound on a table so forcefully an ashtray flew off. Monaghan states that Fulkerson's "tantrums" were generally known by other supervisors, pit bosses, and dealers prior to the incident on October 24, 1999. Monaghan states that because Fulkerson wagered high amounts of money, his behavior was tolerated and to his knowledge, Fulkerson had never been cautioned about his behavior. Monaghan observed that high limit players rarely are ejected from the casino unless they are extremely physical.

Monaghan had also been struck on the hand by Fulkerson while picking up his chips prior to October 24, 1999. He said Fulkerson appeared angry at him and has also verbally abused him on other occasions. Monaghan states he reported the incident to a pit supervisor but was told to ignore Fulkerson. Monaghan states he has heard other dealers complain about Fulkerson's "mental and physical abuse." Monaghan Deposition, p. 70.

Viewing these facts in a light most favorable to the plaintiff, a reasonable jury could conclude Harvey's had knowledge of Fulkerson's tendencies to become agitated and violent and therefore Harvey's failure to remove Fulkerson or monitor him closely could have played some part in the injury Frederick received.

Harvey's has also moved for summary judgment on plaintiff's claim the M/V Kanesville Queen is unseaworthy. Plaintiff argues Harvey's failure to enforce safety measures that would protect casino employees from individuals such as Fulkerson resulted in an unseaworthy vessel.

■■■ To be seaworthy, a vessel must be reasonably fit for its intended purposes. *See Ceja v. Mike Hooks Inc.,* 690 F.2d 1191 (5th Cir.1982); *Johnson v. Bryant,* 671 F.2d 1276, 1279 (11th Cir.1982); and *Logan v. Empresa Lineas,* 353 F.2d 373 (1st Cir.1965) *cert. denied,* 383 U.S. 970, 86 S.Ct. 1276, 16 L.Ed.2d 310 (1966). However, a shipowner is not obligated to furnish an accident-free vessel and the mere happening of an accident on a vessel does not establish it is unseaworthy. *Johnson,* 671 F.2d at 1279. "[T]he vessel owner's ... strict liability for the seaworthiness of the vessel is defined only by reference to the vessel's intended voyage, the hazards likely to be encountered, and the vessel's ability to withstand these hazards." *American Home Assurance Co. v. L & L Marine Serv., Inc.,* 875 F.2d 1351, 1354 (8th Cir. 1989) (citations omitted). "The doctrine of unseaworthiness contemplates that a ship's hull, gear, appliances, ways, and appurtenances and manning will be reasonably fit for its intended purposes." *Moreno v. Grand Victoria Casino,* 94 F.Supp.2d 883, 890 (N.D.Ill.2000) (citation omitted). "Negligent orders, insufficient crew members and assigning too few crew members to a job may deem a vessel unseaworthy ... so may a missing or inadequate safety fence." *Id.* Plaintiff's claim regarding Harvey's failure to protect her from the known tendencies of Fulkerson simply does not fit the area protected by the general maritime law of unseaworthiness. The Court finds plaintiff has not produced sufficient evidence to demonstrate Harvey's ship is unfit to operate as a riverboat casino. Accordingly, this portion of Harvey's motion is granted.

For the reasons set forth, the Court denies Harvey's motion for summary judgment on the issue of Jones Act coverage and negligence, but grants summary judgment on the unseaworthiness claim.

IT IS SO ORDERED.